JOHN NEEDY, Appellee, v. JAMES O. LITTLEJOHN, Appellant.

**Automobile accident:** NEGLIGENCE: EXCESSIVE SPEED: EVIDENCE.  In
1 an action for injuries, the alleged result of defendant's negligence in the operation of an automobile, the evidence is held insufficient to warrant a finding that the defendant drove at an excessive rate of speed.

**Highways:** PASSING OF VEHICLES: NEGLIGENCE: PROXIMATE CAUSE:
2 EVIDENCE.  While the statute requires a person with a vehicle on a public highway to turn to the right and give one-half of the traveled road, on meeting another vehicle, still failure to do so is not conclusive evidence of negligence; as where the other party is entirely out of the traveled road and there is room to pass on the beaten track without danger: it is only where failure to observe the statute is the proximate cause of an injury that liability attaches.  Evidence held sufficient to require submission of the question of proximate cause to the jury.

*Appeal from Buchanan District Court.*— HON. F. C. PLATT, Judge.

TUESDAY, MARCH 17, 1908.

ACTION at law to recover damages for injuries sustained by plaintiff due, as is alleged, to defendant's negligence in operating an automobile.  Trial to a jury; verdict and judgment for plaintiff, and defendant appeals.— *Reversed.*

*Cook & Cook,* for appellant.

*Springer & Smith* and *E. E. Hasner,* for appellee.

DEEMER, J.— Plaintiff claims that while driving upon a highway, the traveled part of which was not more than twenty-one feet in width, with a single horse and buggy, he

**1. AUTOMOBILE ACCIDENT: negligence: excessive speed: evidence.**

met defendant who was driving an automobile; that defendant approached him on the left or wrong side of the highway, was going at an unusual and dangerous rate of speed, and that, in passing, his (plaintiff's) horse took fright, jumped from the traveled portion of the track down a rather steep embankment at the side thereof, and caused the injuries of which he complains. Defendant denied all negligence on his part, and pleaded contributory negligence on the part of plaintiff. As the principal point made upon this appeal relates to the sufficiency of the testimony, we shall set out all of it which tends in any manner to show negligence. One witness testified that when he saw defendant's machine it was going at a good rate of speed, and that it did not slow down as it approached the plaintiff. Another said that she saw the auto and noticed no cessation of speed as it approached the plaintiff, but she also testified on cross-examination as follows: " The automobile was going away from me all the time, and I have noticed that it is more difficult to state whether there is any variation of the speed of a retreating train and of a retreating automobile. I would not be able to say absolutely whether the automobile slowed down or not." Another witness testified as follows: " Q. State where you found the left wheel of the automobile to have run with reference to the traveled track? A. I think the left wheel was about the middle of the traveled road, as near as I could tell without taking any measurements."

Cross-examination: " The accident happened when the automobile got opposite the buggy as nearly as I could judge.

When the automobile got opposite the buggy the horse and buggy went over into the ditch. The horse and buggy went over into the ditch about the same time as near as I can judge."

Plaintiff gave the following version of the affair:

When first the machine turned towards me I pulled out to my side of the road about as close as I .dared get. Q. How did that machine seem to be coming towards you? A. It seemed to be coming fast — extra fast. It was on the east side of the road and seemed to be coming direct to me. Q. What happened when the machine came to you? Did it change its speed in any manner that you observed? A. As the machine got direct to me, seemed to be in front of me, the two coming together, my horse whirled off, went over the embankment. Q. What happened to you and to the buggy and to the horse? A. The horse turned and went down the embankment and the buggy went over, and the buggy turned over and laid on its two right-hand wheels. The horse headed north with the one thill on its back and the other on its side. Mr. Truax and Mr. Netcott and I picked the buggy up, then investigated as to where the wheel tracks of the automobile were. Q. Where was the left wheel of the automobile with reference to the center of the traveled way? A. It was nearer the east side than it was to the west side. I was driving the horse and single buggy. I have driven the horse before, and had met automobiles before when I had been driving her single. I met automobiles a number of different times. I met one that morning right here on Main street. It ran across the bridge right behind me, and when I got on the other side of the bridge it went by me. The horse is an extra gentle animal. When I met the automobile I had my lines one in each hand, and had my whip in the right hand. When I had met automobiles before the animal seemed to be quiet, and I had passed them without difficulty. Q. As the automobile approached closely to you, it turned to the right of the road, Mr. Needy? A. No, sir. Q. It didn't turn out to the right on the road at all? A. Not that I saw. Q. Not that you saw; then it continued just the same on the road the whole distance down the road — is that correct? A. It continued on the east side of the half. Q. Yes, sir; and it continued just the same when it

passed you as when you first saw it, and it continued the same all the way down the road coming to you from the time you first saw it that it was when it passed you on the east side of the road? A. Not exactly. Q. You mean it did not run in a straight line? A. No, sir. Q. But you mean that it kept the same general position on the east center of the road from the time you saw it turn south until the time it passed you? A. No, sir; not exactly that way. I mean that it come direct to me — come direct to me; then when it, just as my horse flew, it veered over a little to the right, but was not over half of the road. Q. Come to the left — come to you; it passed to the left of you, didn't it? A. Come right up against me. Q. Didn't touch you, did it? A. I don't know as it did, because the horse cleared herself away from there. Q. Where was your buggy on that turnpike; how near to the east edge of the turnpike was your buggy at the time that the automobile passed you? A. Right along the edge of the grass. Q. Right along the edge of the turnpike? A. Yes, sir; the east edge. Q. And the left wheel of that automobile passed you a foot and a half east of the center of the turnpike? A. Passed me? Q. That is where the automobile track was, was it not, at the place of the accident? A. I should think when the automobile went by me I was in the ditch. There is where I was.

On cross-examination he testified as follows:

The automobile was on the east side more than it was in the center. It wasn't hugging the east bank, it was on the east center all the time from the time it turned the corner. I heard the noise before I saw it turn around the corner, and the noise continued about the same all the time. I was driving with my horse coming down that turnpike and saw the automobile coming all the time, and heard the noises all the time. The automobile didn't exactly keep in a straight line from the time when I first saw it. It turned over a little to the right as it came direct opposite me. It turned over to the right about six inches. That is my judgment as near as I can tell. The automobile track was to the east side of the highway. I found that left automobile track a foot and a half to the east of the center of the road at the point where the accident happened. I remember testifying that when

Mr. Littlejohn came down that turnpike his left wheel was
two feet to the east of the center of the road. Those are the
distances according to my best judgment. As near as I
know my horse went down the embankment at the time the
machine came opposite me. At the time the automobile
passed me the left track of the automobile was a foot and
a half east of the center of the turnpike and the automobile
didn't hit me or hit my buggy, it passed to the west side of
me. At the time the automobile passed to the west of
me my horse whirled square to the east, seemed to whirl on
her hind feet, and she went right down the embankment.
The horse and buggy went down straight off together.

This testimony was practically all disputed by many
witnesses for the defendant; and we have set it out to show
the strength or weakness of plaintiff's case. Defendant's
testimony all showed that the auto was not running at any
time to exceed five miles per hour after turning into the
road where it met plaintiff, and that just before meeting
him the speed was reduced to three miles per hour. All
the witnesses agree that plaintiff's horse showed no signs
of fright until the machine had passed and was either directly
opposite or quite beyond the animal. The trial court sub-
mitted the case to the jury on the theory that it might find
defendant negligent in the rate of speed or in failing to
give plaintiff the full one-half of the road. Neither the
color and style of the car nor the noise made by it was re-
garded as sufficient ground upon which to predicate a finding
of negligence. We here quote some of the instructions to
indicate the theory on which the case was tried:

If you believe from the evidence that as the defendant
approached the plaintiff he slowed down his machine to a
reasonable and proper speed under the circumstances, and
that the plaintiff's horse showed no evidence of fright at the
approach of the automobile, and that the defendant turned
his machine to the right and approached the defendant's
horse and buggy at such a distance to the right as would en-
able the plaintiff to pass the automobile with safety had the

horse not become frightened, then it would be your duty to find for the defendant.

What was a reasonable and proper rate of speed under the circumstances, as disclosed by the evidence, you must determine, and you are instructed that if you find from the evidence that the horse showed no fright at the automobile until at or about the time the defendant's automobile came opposite the horse and buggy, that fact should be considered by you as of great importance in determining whether the rate of speed of the automobile was or was not reasonable and proper under the circumstances.

You are instructed that if the plaintiff was driving along the highway with a loose line, and that he conducted himself in such a manner as to indicate to the defendant that he thought the horse would not be frightened, and if you further find that the horse showed no fright at the automobile until the defendant reached or was opposite the horse and buggy, that under such circumstances the defendant was justified in operating his automobile at a much higher rate of speed than he would have been had the horse shown fright, or had the plaintiff indicated by his conduct that he had any fear himself that the horse would become frightened.

It is not claimed by the plaintiff that the automobile collided with the horse and buggy. He does claim, however, that the defendant did not give him half of the road. The law requires that a person proceeding along the public highway with any vehicle must turn to the right and give one-half of the road to a vehicle which he meets. What is meant by one-half the road is one-half of the traveled track; yet there was no obligation on the part of the defendant to give one-half of the traveled track, provided the plaintiff's horse and buggy were outside of the traveled track and on the east side of the turnpike, as in such case the defendant had the right to run his automobile in the traveled track, provided there was room to pass, and the horse had shown no signs of fright; and even though you find from the evidence that the defendant did not turn to the right and give the plaintiff one-half the traveled track, still if the accident was not caused by his failure to do so, then the plaintiff could not recover on that ground.

These instructions are not complained of by either party save as defendant insists they were without support

in the testimony, and that thereunder there should have been a verdict for him.  These instructions considered abstractly undoubtedly stated the law, and we have but two questions with reference thereto.  First. Was there enough testimony with reference to excessive rate of speed to take the case to a jury, and second, was there sufficient evidence to justify a finding for plaintiff under the last paragraph of the charge quoted?  Considering the question of excessive speed alone we do not think there was enough testimony to justify a finding for plaintiff.  We have given all there is of it and, without setting it forth again, content ourselves by saying that it would have been the duty of the trial court to have set aside a verdict for plaintiff based upon excessive speed alone.

As to defendant's liability for not giving plaintiff the full one-half of the road the question is close and difficult of satisfactory solution.  But for one item of testimony we should be inclined to the view that no negligence in this particular is shown.  Plaintiff testified that the machine came down toward him on the east side of the road, directly at him, until just as it reached him when it veered off somewhat to the right; that while the machine did not strike his horse or buggy it came so close that the horse became frightened and went off into the ditch.  This testimony was modified somewhat on cross-examination, but we are constrained to hold that there was enough to take the case to the jury upon the thought that defendant ran his machine directly toward the horse until he was so close thereto as to frighten it, and that he then veered to the right in order to pass it. Different minds might reach different conclusions upon this question, and in such cases the matter of negligence is for the determination of a jury.  The fact that one does not give another the full half of the road to which he is entitled is not conclusive evidence of negligence.  The instruction last quoted announces the true rule on this subject as we

2. HIGHWAYS: passing of vehicles: negligence: proximate cause: evidence.

understand it.   See *Riepe v. Elting*, 89 Iowa, 83.   The
section of the Code providing that one meeting another must
give one-half of the road makes him liable for failure to do
so only when that failure results in damage — in other words,
when it is the proximate cause of the injury.   See Code;
*Buxton v. Ainsworth*, 138 Mich. 532 (101 N. W. 817);
*Walkup v. May*, 9 Ind. App. 409 (36 N. E. 917).

It was for the jury to say whether or not under all
the circumstances defendant's failure to observe the law
of the road was the proximate cause of the accident.   These
are the ultimate and controlling questions in the case, and
we need not consider the other propositions argued, for they
are either covered by what has already been said, or are
without merit.

For the error pointed out, the judgment must be, and
it is, *reversed*.