OSCAR B. SCHIER and CARL F. SCHIER, Trading as "The Hygeia Dairy Co.," *vs.* ESTHER WEHNER, Infant, by Her Father and Next Friend, John J. Wehner.

*Negligence*: *proof; child run over in street; res ipsa loquitur; when does not apply.*

A prayer seeking to instruct the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, amounts to a demurrer to the evidence, and on appeal, the Court will consider all the evidence offered, to determine the correctness of the ruling of the lower Court.

p. 555

After the passage of a wagon on a street, certain witnesses saw a child, five years of age, lying in the street, that had apparently been run over; no witnesses saw how the accident happened; held that it was not a case of *res ipsa loquitur.*

p. 558

Evidence that the driver of the wagon jumped off the wagon before it stopped and ran back and carried the child to its mother, then jumped in the wagon and drove off, is not any evidence of an admission of negligence. p. 558

In the absence of evidence it could not be concluded that the wagon was going at any improper rate of speed.

pp. 556-557

In the absence of any evidence tending to show negligence on the part of the servant of the defendant, medical testimony as to injuries received by the child is immaterial. p. 558

To show negligence it is not necessary that there should have been an eye witness to the accident. p. 555

But it is necessary that there be some evidence indicative of negligence. p. 555

*Decided December 6th, 1911.*

Appeal from the Baltimore City Court (Dobler, J.), where there was a judgment on verdict for $8,000 for the plaintiff.

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John E. Semmes, Jr.,* and *Chester F. Morrow* (with a brief by *John E. Semmes, Jesse N. Bowen* and *John E. Semmes, Jr.,* and a brief by *Oscar Wolff* and *Chester F. Morrow*), for the appellants.

*Lee S. Meyer* (with a brief by *Kaufman* and *Kaufman*), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This is a suit instituted by Esther Wehner, an infant, by her father and next friend, John J. Wehner, to recover damages for injuries received on October 31, 1910, from being run over by a wagon belonging to the defendants Oscar B. Schier and Carl F. Schier, partners in the milk business, conducting their occupation under the name of the "Hygeia Dairy," while the wagon was being driven by an employee of the firm named Carl Schmidt. The record contains but two bills of exceptions, of which the first was reserved to the rulings of the trial Court on the prayers, and the second was to the action of the Court in permitting, at the time when the first bill of exceptions was signed, certain physical measurements of the driver, Carl Schmidt, to be incorporated in the record. The appellant conceded that this second bill does not raise any ruling which could be regarded as reversible error, and this admission makes consideration of this bill unnecessary.

At the trial the only evidence offered was that adduced on behalf of the plaintiff. At its conclusion the plaintiff presented two prayers, of which the first was directed to the right of the plaintiff to recover, and the second laid down the rule for the measure of damages. The defendant likewise offered two prayers, by the first of which the Court was asked to instruct the jury that there was no evidence

in the case legally sufficient to entitle the plaintiff to recover, and the second was the usual prayer on contributory negligence.

The trial Court granted both of the plaintiff's prayers, and refused both of the defendant's.

Since the first prayer offered by the defendants amounted to a demurrer to the evidence, it is necessary to consider the testimony offered, to determine the correctness of the ruling of the Court upon the first prayers of the plaintiff and defendants respectively, bearing in mind that the essential element requisite for a recovery is some act of negligence either of commission or omission on the part of the defendants or their servant.

On the morning of the day named the infant plaintiff, who was a child just past her fifth birthday, was sent by her mother to a grocery store on the opposite side of Streeper street from her home to get some soap. Having obtained the soap, the little girl started to return. At the same time the dairy wagon of the defendants, driven by their servant Schmidt, was moving north on Streeper street just above Orleans street, or somewhere between 35 and 60 feet distant from where the child was about to cross. Streeper street at this point is about 25 feet in width and paved with vitrified brick. The next that was seen of the child she was lying face down with her waist line distant about three feet from the curb, on the side of the street nearest her home, and the wagon had passed on to a point some 14 or 15 feet beyond where the child was lying.

None of the witnesses who testified saw the child actually run over by the wagon of the defendants, and, therefore, none of them is able to say precisely how the accident did take place. While, of course, it is not an absolute essential to establish negligence that there should have been an eye witness to the accident, *United Railways* v. *Cloman,* 107 Md. 688, it is necessary that there be some evidence indicative of negligence in the circumstances surrounding an occurrence, either antecedent to or coincident with the happening

of the accident. Thus in the case of the *United Railways* v. *Carneal,* 110 Md. 211, where a child of three years was struck by an electric car, there was positive evidence adduced by the plaintiff to the effect that the motorman of the car was looking at the buildings on the side of the street, and ran his car past, without seeing one would-be passenger; and in the case of the *City Passenger Railways* v. *McDonnell,* 43 Md. 534, where a child of two years was run over by a horse car, there was evidence that the attention of the driver was occupied by a young lady in the doorway of a house on the opposite side of the street from that from which the child approached; and in the case of *McMahon* v. *N. C. Railway.* 39 Md. 438, in which a child between five and six years of age was run over, it affirmatively appeared that a string of freight cars which had been stationary for some five hours was started without a signal of warning of any kind. In each of these cases there was positive evidence of negligence independent of the accident itself.

Let us compare the facts in the cases cited with the case under consideration. The witness Mamie Blessing testified to seeing the wagon coming up the street, and that the horse was trotting, but she last saw the wagon just after it had passed Orleans street distant some sixty feet from the point of the accident, and turning to her work did not see it again until after the child had been run over. The witness Grover testified that as he turned into Streeper street from Orleans, he saw the wagon coming up Streeper street, and that as he turned the corner the wagon was about in the middle of Orleans street, that "the driver was not driving fast nor was he driving slow," that "he was not walking," but according to the further testimony of the witness he had had time to walk up Streeper Street from Orleans to the store where the plaintiff had bought the soap and enter the store before the plaintiff had left the store to return to her home. From this evidence it is impossible to conclude that the driver of the wagon was proceeding at any improper

rate of speed, and neither of these witnesses, nor any of the
other witnesses in the case, give any evidence tending to
show that the driver was not giving proper attention to his
team as he drove up the street, or that he was not in a posi-
tion to see, or did not see persons on or crossing the street,
and whether they were in a position of danger so as to
impose upon him the duty of stopping.  What does appear
from the evidence, and all that appears is that while the
servant of the defendant was proceeding up the street, the
plaintiff started to cross; that she had crossed over at least
twenty feet of the space between curb and curb, and passed
in front of the approaching team, but whether she was struck
and knocked down by the horse, or whether becoming fright-
ened she endeavored to spring forward, slipped and fell
underneath the vehicle, or how the accident in fact occurred,
there is no evidence whatever.  It has been frequently said
in this State, that the bare fact that an injury has happened,
of itself and apart from all surrounding circumstances, can
not authorize an inference that it was caused by negligence.
To assume that, is to assume the very fact required to be
proven; *Joyce* v. *Flanigan,* 111 Md. 499; or as was said
in the case of *B. & O. R. R.* v. *Black,* 107 Md. 666: "All
that is certain is that the plaintiff was injured in some way,
and the plaintiff asks that the jury be allowed and in the
absence of all explanatory evidence to infer that some act
of a negligent character for which the defendant is responsi-
ble cause the injury sustained.  No case has gone to that
extent, and no known principle can be cited to sustain such
a position."

It has been earnestly argued on behalf of the plaintiff
that the conduct of the driver immediately following the
accident amounted to an admission of negligence on his
part, or was at least sufficient to afford a presumption of
negligence.  That conduct is described as follows by the
witness Mamie Blessing: "I seen the driver jump off the
wagon before the wagon had stopped, and he picked the

child up; and I seen him take her to the cellar window and then Mrs. Wehner came and took the child and he got on the wagon and I seen him make a motion like this (indicating) that he was scared, and Mrs. Wehner took the child and ran after him, but he flew up the street in the wagon." And upon re-examination the witness again stated that the driver jumped from the wagon to return to the child before it had come to a stop. The witness Belle Kernan testified that she "Only saw the child in its position in its mother's arms and the man running to his wagon and the wagon was still going and someone called my attention to it." She further testified that she went over to the driver, and said to him, "Don't go away, probably you can help her to the hospital with the child," and he said, "Oh, yes, but * * *, and then he went on." It is not a question whether the driver showed proper consideration, but whether his conduct amounted to an admission of negligence upon his part. Schmidt knew when he jumped from his wagon that he had run over a child, how serious might be the injuries he could not know, and it was but natural that he should have been excited, and his conduct should not be judged by the same standard as would be deliberate acts, done when there was nothing to arouse any unusual emotion. His conduct was rather that of a man nervously exicted, than of one callously indifferent, or admitting a dereliction on his part. Had he been intent on escaping he would hardly have jumped from his moving wagon to pick up the unfortunate child, and hold it until he could place it in the mother's arms. This is not a case in which the doctrine of *res ipsa loquitur* can be applied, for it does not fall within either of the classes coming under the legal principle as enunciated in *Strasburger* v. *Vogel,* 103 Md. 89.

The record is largely made up of the medical testimony as to the nature and extent of the plaintiff's injuries and the probability, or the reverse, of their leaving permanent effects, but until some evidence is adduced tending to show the negligence of the servant of the defendants the medical

testimony is immaterial. In the foregoing statement the endeavor has been made to set forth the strongest evidence contained in the record which could in any way tend to show either the negligence of the driver Schmidt, or the contributory negligence of the plaintiff, and as to both of these the proof is strangely lacking, and "to mulct a defendant in damages without proving what has caused the accident is to punish him not for any wrong he has done or for any duty he has omitted but because the plaintiff can not prove what she wants to find out." *So. Balto. Car Works* v. *Schaefer,* 96 Md. 105.

It follows, therefore, that the action of the trial Court was correct in refusing the second prayer of the defendants; but it also follows that the first prayer of the plaintiff should have been refused, and that the first prayer of the defendants should have been granted.

The judgment below will, therefore, be reversed, without a new trial.

> *Judgment reversed, without a new trial,*
> *costs to the appellants.*

BURKE and URNER, JJ., dissented.