## REGENT REALTY COMPANY *v.* CHARLES A. FORD.

[No. 18, April Term, 1929.]

*Decided June 25th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter L. Clark* and *Clater W. Smith,* with whom was *W. Hall Harris* on the brief, for the appellant.

*Edward L. Ward* and *Benjamin H. McKindless,* with whom was *Alfred T. Edel* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Charles A. Ford, plaintiff and appellee, was injured on the night of October 5th, 1926, while bowling at the bowling alleys of the defendant. He sued the defendant and recovered a verdict on which judgment was entered. This appeal is from that judgment.

The plaintiff offered testimony tending to prove that plaintiff, on the night of the accident, with other members of a bowling club to which he belonged, played in a bowling tournament at the alleys of the defendant from about 8:30 until 10:30, and after that six members of the club remained and played several match games; that during the tournament the alleys mostly used were Nos. 1, 2, 3 and 5. For the match games Nos. 4 and 5 were selected by the bowlers. During these match games, prior to the accident to plaintiff, one of the men fell twice and two others once each on No. 4 alley. One of them, Edward R. Bowers, testified: "With reference to the approach of that alley, I noticed when I started to deliver the ball, it was like a damp sticky floor about our feet, they would not slide or glide * * * and I went headlong * * *. My falling head-on was like some one grabbing me by the ankle and holding me; would not let you slide forward." The witness did not continue to play on that alley; he went to No. 5. In reply to the question whether he said anything to the other players about it, witness said: "I just made the remark that the floor was sticky, and I refused to bowl on it, and I waited for No. 5 alley to finish bowling." Asked whether plaintiff was there when witness made this remark he replied: "I could not say—sure, he was there, but I was not talking directly to Mr. Ford."

Witness saw the man in charge sprinkle out of a can that looked like a talcum can powder of some kind on the floor of No. 4 about two feet back of the foul line. Another, the brother of the plaintiff, said the floor was sticky; he attempted to slide and could not do it; he did not see any one sprinkle powder; did not say anything to any one about the alley being sticky.

Edward H. Walker, Jr., was the witness who said he fell twice. He said he bowled on alley No. 4 in the match games; the runway was rather sticky, or there was something there, you could not slide; he fell on that alley twice before plaintiff fell; does not know what caused him to fall; as he ran to throw the ball, instead of sliding he stopped very abruptly, and he went down on the floor. Couldn't say what caused

him to stop abruptly—"it seems like it was sticky, and seemed like you would slide and something had hold of your feet and would not let you go"; that when he got up he examined the runway and there seemed to be several dark spots around on the floor about the size of a water glass top; did not examine the spots, but they seemed to be a sort of cakey substance; that he did not tell any one about these spots or call the manager's attention to them; that the boys were talking about falling, and witness saw the manager come over and sprinkle talcum or white powder of some kind on the runway.

Of all the people who were there this witness was the only one who saw the alleged spots on the floor. He did not speak of them to any one, and apparently attached no importance to them, as he continued to use the alley without seeking to have the spots removed.

Gilbert Kraft, testifying as plaintiff's witness, said: "I rolled two games on No. 4 alley, and when I was in the seventh box of the third game the alley seemed to get sticky. The alley did not seem to get sticky until that time; it seemed pretty good up until that time. It was in the third game that this accident happened."

It appears from the testimony that it was a damp misty night and that plaintiff and others who fell (with the possible exception of one who was not asked) had rubber heels on their shoes.

Plaintiff testified that he had been bowling ten or twelve years before the accident; he had not bowled on No. 4 that evening until that particular box during which the accident occurred; it happened in throwing the second ball; that when he rolled the first ball he did not slide as well as usual; that in rolling the second ball he noticed his foot seemed to hit something or stop short, as if he ran into something sticky; could not say what caused the sticking; it stuck as if there was something there that grabbed hold of the sole of the shoe; did not notice anything unusual, only the floor did not seem to be as slippery as usual; that he did not see any one fall on that alley prior to the accident.

Maurice Berger was offered as an expert by the plaintiff. He testified that the proper treatment of the approach to alleys is to scrub it and dry it off every morning; that after this is done nothing else is required before starting the games in the morning, afternoon, or evening, unless a damp spot is found, which is removed by steel wool; that a rainy or misty day causes dampness and stickiness so that the bowlers cannot slide, and if they try to slide it will throw them. This stickiness or dirt from shoes is removed by steel wool; that talcum powder is also used to make the approach slippery; that on a damp or misty night, to prevent stickiness from dampness, the steel wool should be used continually, that is, you would have to practically keep a boy up there for that purpose. In further explanation the witness said: "In other words, there are eight alleys, more or less, and you are bowling on one of the alleys and it sticks; you tell the manager to get the spot clean, and the manager tells the boy to go there and clean it, and they wait until it is clean, and when he gets through with that alley, perhaps there is a call for another alley."

On cross-examination this witness was asked: "Q. It is a fact that the rubber heel of a man's shoe clamped down tight on an alley is pretty much the same as putting the breaks on an automobile? A. It is, on a damp night, with black rubber heels. Q. And it will stop you if you put your heel down when you slide, or will slow you up? A. Your own heel won't stop you, but the marks from another heel will throw you. In other words, you can slide with your heel, but if anybody comes up behind you and you leave a mark, they will fall on that mark, but it won't throw you—if the approach is clean. In other words, it makes a sticky spot for the next bowler. * * * You may not be able to slide as fast if your heel is wet like you will when it is dry. Using shoes that have gotten dampness through rain makes the alley stick. Your shoes stick if you are trying to bowl on it with damp soles. Q. If a bowler finds that the alley is sticky, he notifies the manager to clean it, is that right, or some one in charge to clean it? A. Some do and some don't * * *. Some

bowlers don't care if it is a sticky mark over the left side, they will just switch over on the clean side, and then the next one comes up and he wants to bowl on that side and he will call your attention to. it. Q. And when he calls your attention to it, he waits until you clean it off before using it? A. Sometimes they will find a place where they can slide, and sometimes they wait and you go to it as soon as you can.

Raymond L. Wood, manager of defendant, testifying for defendant, said the alleys were scrubbed every morning; that he inspected every runway about six or half past six o'clock the evening of the accident and they were in perfect condition; that the league games continued until about 10.30 or 10.45; that six of the players remained and the bowling was practically continuous up to the time of the accident; that he examined the runway of No. 4 after the accident and there were no spots of a cakey substance there; that the alley was somewhat discolored from continuous sliding of feet over the runway; that at the time of the accident he was balancing his cash getting ready to go as soon as the game was completed; he and the pin boy were the only employees there; that he did not sprinkle any powder on the runway; that he did not see any one fall prior to the accident; that talcum powder was kept on the top of the safe which is directly back of No. 4 alley, and could have been used without his observing it; "at my place I kept a bunch of steel wool on the lower rack of each return. At the bowlers' request, I use the steel wool, but there are a number of bowlers that use the steel wool of their own accord, realizing that they can get it done before I have a chance to get over there, attending to a number of alleys. There was one piece of steel wool on the return between 5 and 6 and one piece between 3 and 4. At no time during the course of the evening was I requested to use any steel wool on alley No. 4. There was no complaint made to me that night in regard to any alley; none of these bowlers reported to me that alley No. 4 was sticky."

Joseph Brown, Jr., the pin boy, on alleys 4 and 5, testified that no one fell on alley No. 4 prior to the accident.

There were several exceptions reserved by defendant to rulings on evidence, and one to the ruling on the prayers. Defendant relies mainly on the exception to the refusal of its demurrer prayer. If that ruling was wrong, of course, it will be unnecessary to consider the other exceptions. In our opinion that prayer should have been granted. We find no evidence of actionable negligence. Defendants cites a number of Maryland cases and others in which the principle is asserted in varying forms that a person erecting and maintaining a place of public exhibition or a store must use reasonable care in the construction, maintenance, and management of it, having regard to the character of exhibitions given or business done therein, and the customary conduct of "his patrons and if one expressly or by implication invites others to come upon his premises whether for business or for other purposes, it is his duty to be reasonably sure that he is not inviting them into danger, and he must exercise ordinary care to render the premises reasonably safe for the visit." And he especially emphasizes *Agricultural & Mechanical Assn. v. Gray,* 118 Md. 600; *New Theatre Co. v. Hartlove,* 123 Md. 82; *Carlin v. Smith,* 148 Md. 524; *Benesch v. Ferkler,* 153 Md. 682; *Hochschild, Kohn & Co. v. Cecil,* 131 Md. 77; *Easler v. Downie Amusement Co., Inc.,* 123 Me. 334. These principles are applicable, in a measure, to bowling alleys and other places in which patrons pay for the privilege of playing games. But with regard to such places it must be remembered that negligence is relative, and that, in places where games are played, much is left to the participants in regard to the regulation and conduct of the games, and the attendants are expected to serve the patrons and not to direct their conduct; whereas in most at least of the cases cited the *exclusive* control and management was with the proprietors. In the *Easler* case, *supra,* to which our attention was especially directed, a child twelve years old was injured on the grounds of a circus, by the negligence of employees in playing ball, which was not a part of the program, but was being indulged in for their own amusement.

In the present case the participants in the games were

members of a bowling league and had been bowling for a number of years—the plaintiff ten or twelve. There is no evidence that the alleys were not in perfect condition when the league games were begun at half-past eight o'clock, or when the six members, who continued to play after the league games, began their games at 10.30 or 10.45. Indeed, one of their number, testifying for plaintiff, said alley No. 4 was in good condition up to the third game, in which the accident happened. The complaint here is that a condition of stickiness, not existing, so far as the evidence shows, at the beginning, was present on the runway of alley No. 4 at some time during the progress of the games, and caused the injury to plaintiff. One witness claims to have seen several dark "cakey spots". The manager denies that they were there, and there is no evidence that, if they were there, he knew it. It can hardly be said that by the exercise of ordinary care he should have known, because only one of the players claims to have seen them, and he told neither the manager nor any of his associates. Five other players were using that alley, and it was well lighted, and it was the business of each of them to use his eyes for his own protection, and yet none of them saw the alleged spots. How, then, could the manager be charged with constructive notice of their existence if they were not there before the games began? Besides, evidence is lacking that these spots were where plaintiff stuck.

There was evidence that it was a damp misty night, and plaintiff's expert testified that on such a night the runways would become sticky from the sliding over them of rubber heels. The remedy for this condition, according to the witness, is the frequent application of steel wool. There is nothing in his testimony, however, or in that of any witness, from which it could be inferred that it was the duty of the manager to intervene during the progress of a game, except at the request of a bowler. Indeed, it affirmatively appears from his testimony that customarily the need for application of the steel wool is made known by the bowlers. They would naturally be the first to discover it. This witness also testified that talcum was sometimes used to make the runways

slippery. The uncontradicted testimony is that no request was made for either.

The entire burden of appellee's argument is that the accident was due to the alleged "cakey spots." There is no evidence that plaintiff stuck on any of these spots, nor does the evidence show just where they were. He could just as well have been stopped by the sticking of his rubber heel on a damp spot on the floor due to the condition of the weather. With reference to the latter condition, at least, there is no evidence that defendant was guilty of actionable negligence. So that, even if it could be held that there was evidence of negligence as to the alleged cakey spots (which we do not decide), we would have a case where, according to evidence offered by plaintiff, there were two conditions, from either of which the accident might have happened, but for one only of which the defendant was responsible. In such circumstances there can be no recovery. *Balto. & O. R. v. State, use of Abbott,* 75 Md. 152; *Strasberger v. Vogel,* 103 Md. 85; *Wilson & Son v. Blaustein,* 144 Md. 289.

> *Judgment reversed without a new trial, with costs to appellant.*