REALTY & MORTGAGE COMPANY, INC., *v.* LOUISE ULRICH.

[No. 8, April Term, 1933.]

*Decided April 21st, 1933.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James F. Thrift* and *Guy B. Brown,* with whom were *McIntosh & Thrift* on the brief, for the appellant.

*Herbert L. Grymes,* with whom was *George Hofferbert* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the plaintiff (appellee) for injuries sustained by her from slipping on the ice in front of the defendant's (appellant's) property Nos. 507 and 509 on the east side of Wolfe Street (south) in Baltimore.

According to her evidence, the plaintiff was walking south on Wolfe Street, about 6.50 in the morning, on her way to work. The accident happened on Tuesday, January 28th, 1930. On the north side of the defendants' building a down spout, to carry water from the roof, was placed in the Fall of 1929. It was so located that it drained into a pipe, over which was a grating, by which the water from the roof was intended to be carried to a city sewer. The place at which the plaintiff fell was on a driveway which passed across the sidewalk to fifteen garages in the rear of the lot, and the spout was on the alley side of the building. The charge of negligence in the declaration was that over a period of three days ice had accumulated on the sidewalk, "caused in part by the freezing of melting snow and rain dripping from a rain spout which emptied on to the property of the defendants, and flowed over the pavement aforesaid, and by reason of the negligence and careless use and management by them of their

premises abutting on the said sidewalk, in that they failed to divert the flow of the melting snow and rain aforesaid," thereby causing "the icy formation complained of."

The plaintiff testified that the pavement "was covered with snow that morning"; "it was just a light snow." Asked, "What was the condition of the spot where you fell, slipped?" she said, "I noticed it was covered with ice and the snow was on top, and where I did fall was that hole that was filled up with ice." Asked to "describe the spout," she said. "Well, the spout, I taken notice, there wasn't any way for the water to go down. They had a spout and the water comes right over the driveway." This answer was repeated twice to questions by the court. In response to a question by the court, "Now, where was this ice?" she said, "The ice was all over the whole driveway, from the end of the front of the house down to what is supposed to be the gutter." The driveway and sidewalk were "one continuous surface"; there was no curbing across the sidewalk bounding the "driveway". On cross-examination the plaintiff said she had noticed that rain spout ever since she had been going down that way. She looked over and concluded that the water had come from the rain spout, although there was no water running from it at that time. Asked why it was she had occasion to notice the rain spout so often, she said: "Well, because all during the winter months even if it didn't snow or freeze, any water coming out of that rain spout, always laid there and would freeze there and get one cake of ice along there." She testified that she knew it had been raining about five o'clock the day before, not hard, followed by a snow, and it was cold.

Minnie Schell, a fellow worker, who was with the plaintiff at the time, said it was raining when they went home from work, "kind of warm when it was raining." During the night it snowed. She had noticed the spout on the building of 509 South Wolfe Street. She "had seen water from there gush out over the pavement and flow down the walkway."

Frederick Roettger, a foreman of the factory where the plaintiff worked, and who was walking behind Misses Ulrich and Schell on the way to work, said, "There was ice on the pavement the previous day." He ascribed the fall to holes in the sidewalk caused by bricks being out. Asked whether "the ice that Miss Ulrich said she slipped on was ice that had formed from water from the rain spout?" he said, "Well, I wouldn't say about that."

Philip Wlodarek, the president of the defendant company, who had an office in the front of the storeroom in No. 509 South Wolfe Street, testified that on the morning of January 27th, the day before the accident, it snowed in the morning and turned to slush, "that between 3 and 4 P. M. in the afternoon it got moderate" and he shoveled off the pavement and took a broom and swept the same, and it was perfectly dry. "There was no snow or ice on it; and then after 5 P. M. it started to rain."

There is no evidence that the rain on the evening of January 27th, which fell on the roof and came down the rain spout, ran over the sidewalk; in fact, if any inference is to be drawn, it is that the drainage provided for the rainfall on the building was ample to carry off such a rain as was testified to, with no evidence that it "gush(ed) out over the pavement," as Miss Schell had seen at other times. The plaintiff herself said that the evening before "it did not rain hard." At the time she fell, the plaintiff said she did not see any water coming out of the rain spout, but "she looked over and concluded that the water had come from the rain spout," though this would not account for the whole sidewalk being covered with ice, over which an inch or less of snow had fallen. She thus undertook to supply the causal connection between the alleged negligence of the defendant and her injury. "The negligence alleged, and the injury sued for, must bear the relation of cause and effect. The concurrence of both, and the nexus between them, must exist, to constitute a cause of action." *Benedick v. Potts,* 88 Md. 52, 40 A. 1067, 1068; *Balto. & O. R. Co. v. State,*

71 Md. 590, 599, 18 A. 969, 971; *Abend v. Sieber,* 161 Md. 645, 158 A. 63.

If the cause of the injury was the rain followed by freezing, and then by snow, the defendant would not be responsible, because it had not produced the cause of which the plaintiff's injury was the result. *Flynn v. Canton Co.,* 40 Md. 312; *Cooley on Torts* (4th Ed.), sec. 451. In this connection she also undertook to blame her fall on a hole in the sidewalk that was filled with ice, and all of the examination of Frederick Roettger was directed to holes or depressions in the sidewalk where bricks were out. In the absence of evidence that the defendant had made the holes or had taken out the bricks, it would be a defect for which the city and not it might, though we do not so decide, be responsible. *Flynn v. Canton Co., supra.* The plaintiff's witness' (Roettger's) testimony was directed to the holes or depressions in the sidewalk, and he would not verify the plaintiff's theory that the ice on the sidewalk had formed from water coming from the rain spout. If this injury complained of could have arisen from two causes or conditions, for one only of which the defendant was responsible, then the evidence must show that the injury happened as a result of the cause for which the defendant would be answerable. *Regent Realty Co. v. Ford,* 157 Md. 514, 521, 146 A. 457; *Boznango v. Blumenthal-Kahn Electric Co.,* 162 Md. 84, 91, 159 A. 106; *Klan v. Security Motors,* 164 Md. 198, 164 A. 235.

The case of *Newnam v. Moran,* 154 Md. 650, 141 A. 385, which came up on demurrer, supports the theory of the plaintiff's declaration. The difference is that this case comes here on the facts, and the evidence does not measure up to the requirement that it be legally sufficient to establish the negligence with which the defendant is charged as the cause of the plaintiff's injury.

*Judgment reversed without a new trial, with costs.*