WILLIAM A. SHAFER *v.* STATE, FOR USE OF BETTIE E. SUNDERGILL

[No. 63, October Term, 1936.]

508

*Decided January 20th, 1937.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*W. Albert Menchine*, with who was *James J. Lindsay* on the brief, for the appellant.

*David C. Winebrenner, 3rd,* with whom were *Stedman Prescott* and *Alfred R. Jones* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, owner of a motor truck in collision with an automobile driven by the appellee's husband, Stanley H. Sundergill, appeals from a judgment for damages from the resulting death of the husband, and questions rulings on the legal sufficiency of evidence to prove that negligence of the truck driver caused the death, and on the admissibility of evidence.

On a straight section of the Liberty Pike east of Frederick, shortly after midday on a Saturday, in clear, dry weather, the truck, of one and a half tons' capacity, eight feet wide, was being driven east toward Baltimore, and Sundergill, in a Ford car, was driving west toward Frederick, when the two collided and ran into the bank on the north side of the road. There was only one surviving eyewitness, Ogden, the driver of the truck, and he testified that the two vehicles were approaching, each on its·

own right side, seeming clear of any danger of colliding, when something seemed to happen to the automobile coming west, the Sundergill car, to make it turn toward the truck. Ogden testified that his steering wheel was wrenched out of his hands by the collision, and he was rendered unconscious, recovering when on his way to a hospital. Evidence offered to support a contrary explanation, that the collision was caused by negligent driving of Ogden, consists entirely of testimony of marks on the road seen by witnesses arriving at various times after the accident. Reliance upon such evidence alone for judicial determination of movements leading to a collision, and for imposition of a liability for damages, is beset with dangers, but there would seem to be no room for doubt that in some cases it might amount to proof of negligence. *Schier v. Wehner,* 116 Md. 553, 555, 82 A. 976; *Opecello v. Meads,* 152 Md. 29, 38, 135 A. 488; *Anderson v. Lynch,* 232 Mich. 276, 279, 205 N. W. 134; *Amer. Film Co. v. Moye* (C. C. A.) 267 Fed. 419. It would be legally sufficient or insufficient in a particular instance according as it might or might not rise above speculation and conjecture on what had taken place, and so afford the rational basis needed for an adjudication that the defendant's agent was guilty of negligence which produced the accident. *Balto. & O. R. Co. v. State, use of Savington,* 71 Md. 590, 599, 18 A. 969; *Benedick v. Potts,* 88 Md. 52, 54, 40 A. 1067; *Balto. & O. R. Co. v. Black,* 107 Md. 642, 661, 69 A. 439, 72 A. 340; *Lowenthal v. Backus Motor Co.,* 140 Md. 33, 37, 116 A. 834; *Barker v. Whitter,* 166 Md. 33, 39, 170 A. 578.

The fact to be proved is, of course, not merely the existence of negligence. "The mere existence of negligence at the time and place of an injury does not give a right of action. The injury must have been caused by it." *United Rwys. & Elec. Co. v. Perkins,* 152 Md. 105, 110, 136 A. 50, 52; *Needy v. Littlejohn,* 137 Iowa, 704, 710, 115 N. W. 483; *Morrison v. Clark,* 196 Ala. 670, 676, 72 So. 305.

The road at the site of this accident is one of concrete,

twenty feet wide, with a four foot shoulder on each side, giving a roadway of twenty-eight feet. The truck, as stated, was eight feet wide, the car, of course, not so wide. The concrete center portion is laid in sections of forty feet by ten, that is, with expansion joints filled with asphalt crossing the road every forty feet, and a line of joints with asphalt extending along the center of the road. The width of the joint in the center was estimated by one witness at six inches, but by a civil engineer called by the plaintiff at one and a half inches. Evidence of marks of wheels of a truck, or looking like those of a truck, with relation to the line of center joints, is relied on as a basis of the charge of a cause of the collision in negligence of the driver of this truck. The problem of legal sufficiency of all the evidence for finding this negligent cause is complicated by the facts that the road is shown to have been a much traveled highway, and some of the witnesses arrived at long intervals after the accident. One witness described the ordinary traffic as made up mostly of passenger cars. The problem is one of further difficulty by reason of uncertainty of meaning in verbal explanations given by the plaintiff's witnesses, and the impossibility of following on appeal their pointing out of positions on a diagram used at the trial, or illustration by placing toy cars. The court has none of this testimony by pointing out or illustrating by placing toy cars, but is of opinion that nevertheless the appellant should not be deprived of a right of review of the sufficiency of the evidence as presented. Such omissions of explanations in the bill of exceptions of the meaning of the pointing out "here" and "there" on plats and the like, are not infrequent in cases on negligence. The explanations should be given, either by statements of the effect of the pointing out, or by having a record made of the indications of position in some form that will enable an appellant to present them for review. But the view of the court is that in a case in which the trial court does not certify that any facts were brought out in addition to those stated verbally by the witnesses, and especially

when the appellee, as here, does not contend that any material evidence is lacking from the bill of exceptions, the court should allow the appellant his right of review unless the court itself should conclude that there is good reason for not deciding upon a review of the record as they find it. The party offering the evidence necessarily controls the method of presenting it, to a large extent, and he should see that it is not presented in such obscurity that the appealing party cannot have it in the record. *Surrey Lumber Co. v. Zissett,* 150 Md. 494, 499, 133 A. 458; *Jackson v. Shawinigan Electro Products Co.,* 132 Md. 128, 141, 103 A. 453; *Kurrle v. Baltimore,* 113 Md. 63, 74, 77 A. 373; *Cordish v. Bloom,* 138 Md. 81, 90, 113 A. 578.

Caution in testing the evidence is required by the fact that some of it was modified when the attention of the witnesses was called to their statements on a previous trial.

All witnesses agree that, after the collision, the two vehicles were found in the bank on the north side of the road, the Sundergill car badly demolished on its left side, with the body of Sundergill lying with the upper part out in the road and the lower part still in the car. And there was a pool of blood four to six inches across beside the head, two and a half feet from the edge of the concrete, and some broken glass near the car, and scattered vegetables nearby. The greater part of the glass was near the car, but some of it extended a foot to the rear of the car. The truck was from twenty-five to forty feet beyond the car, to the east. And it was wrecked on its left side, with the left front wheel bent in, not straight, the chassis bent, the axle pushed back on the frame, the tire flat, and the transmission broken. And there is agreement that in the bed of the road, stretching back from the truck to a point in the region of the car there were scars, smudges, streaks in the road, variously described as marks of braked wheels, or skid marks. There appears to have been no examination of the brakes to determine whether

512

the wheels were held by them. The truck driver was found walking around on the road in a dazed condition.

The first witnesses to reach the scene were two young men who had been working on a baseball field a hundred yards or more away, and who heard the crash of the collision. Called by the defendant, they testified that they saw the conditions just described, that after having failed to get help from two passing cars they stopped a car in which a Captain Peters, of the Hagerstown police department, came along, and the two drivers were taken away to the hospital by Captain Peters. The two young men denied that there were then any tracks in the road other than the smudges or skid marks extending in between the two vehicles standing by the road. They did not see any other truck passing before Captain Peters came.

Captain Peters' testimony for the plaintiff is unintelligible in some portions, but the effect of it on the whole seems apparent. After taking charge of the drivers, he looked for marks on the road, and he spoke of marks in the center, but apparently did not refer to any marks other than those extending in between the two vehicles, and which he thought started in the center of the road. On cross-examination he said that all he saw were the brake marks, and he did not know whether the truck was on its right-hand side of the road or its left before the accident. And then, confirming testimony he had given at the former trial, he said the marks he saw indicated that the truck had been in the center of the highway until after it passed the Sundergill car, after the collision. This testimony was succeeded by a direct examination on positions of the toy trucks, which the court cannot follow.

A member of the state police, who arrived about an hour and ten minutes after the accident, when, as he said, "there was lots of traffic coming and going all the time," and "cars lined up on both sides of the road," and sightseers walking about the place, testified that, in addition to the marks extending in between the vehicles and up to the truck, he saw tracks of dual wheels along the

center of the road to the west, beginning about thirty-five feet beyond the place where the Sundergill car was, and twenty-two feet beyond the smudge marks leading to the truck in the bank. Those westerly marks ran along about twelve or fifteen feet, and were astride the center of the road three feet to the northerly side. On cross-examination, however, this witness confirmed a statement he had made at the previous trial that, although he had been investigating the facts surrounding the accident from the time of his arrival on the scene until the holding of a coroner's inquest, and had looked for some marks, he was unable to find any from which he could say whose fault it was, though of course there were marks on the road after the collision, made by the truck.

A witness who reached the scene fifteen of twenty minutes still later testified that he saw, west of the blood spot in the road, marks that looked like marks made by dual wheels on a truck, two on each side of the center of the road, extending along about fourteen feet. But when asked in what direction those marks went, answered that they went direct to the spot of blood. If by that he meant that they went as far as the spot of blood on the side of the road, the witness evidently was not referring to marks seen by witnesses farther west, but to marks seen extending in from the center to and between the standing vehicles. Another witness, who arrived at the scene nearly three hours after the accident, testified to tracks in the road farther west, saying they started at a distance of thirty-four feet west of the car; and he estimated that the tracks on the north side were four or five feet over the center.

There was an omission of any testimony in the case describing the wheels and tires of this truck for comparison.

The testimony concluded with statements that at a distance of a quarter of a mile, before the accident, Sundergill was driving at a speed of forty miles an hour, and statements of the two young men for the defendant that the truck as it passed them a hundred or more yards away was running at a speed of thirty miles an hour.

It is clear that the two vehicles in collision were turned to the road bank on the north side, and that the truck became free and went on twenty-five or forty feet farther before it, too, stuck in the bank. That any of that movement after leaving the center of the road may have been due to steering or other action by the driver of the truck it would be impossible to judge from the marks described, for the breaking in of the left front by the collision might, and almost certainly would, have an effect on the direction in which the momentum of the vehicle would take it in the fraction of a second before it came to rest. The bending in of the left front wheel and other injuries on that side would naturally tend to turn the truck to the left. The exact place on the road where the two vehicles came together seems to be left in uncertainty, except that Captain Peters, from his brief examination, and other witnesses, were of the impression that the collision occurred somewhere in the middle of the road. The pool of blood accumulated near the side of the road, by the decedent's head, and the broken glass there and to the rear, would not indicate the spot of the collision, for the movement from any point of impact to the road bank must necessarily have been very quick, almost instantaneous, and the wound might have been received, and the breaking of glass occurred, in any part of the movement while the two vehicles were together, before the truck was clear of the car and went beyond it. In the marks on the side of the road, therefore, the court finds no evidence legally sufficient to indicate the cause of the collision. They do not carry the view back of the fact of a collision throwing the vehicles to the one side. There may be room for conjecturing the cause, but nothing more. And "in matters of proof we are not justified in inferring from mere possibilities the existence of facts." *Balto. & O. R. Co. v. State, use of Savington,* 71 Md. 590, 599, 18 A. 969, 971; *Culler v. Standard Oil Co.,* 127 Md. 405, 411, 96 A. 558. Proof directs a selection from among possibilities. *Regent Realty Co. v. Ford,*

157 Md. 514, 521, 146 A. 457; *Realty & Mtge. Co. v. Ulrich,* 164 Md. 666, 670, 165 A. 708.

The testimony of tracks astride the center of the roadway thirty-four or thirty-five feet to the west of the position in which the car was found, and twenty-two feet beyond the near end of the tracks found leading to the car and on to the position of the truck in the bank, may be of questionable weight, because of the use of the road by cars and pedestrians after the collision and before the marks were seen, but the weight would be for the jury to determine, so far as the evidence was admissible. There were exceptions taken to the admission of it. But when admitted, it left a serious question for the court. It may be supposed that the witnesses who gave the testimony had in mind that the tracks they were describing were similar to tracks which would be made by the wheels and tires of this truck. But none of them say so, or give testimony from which the fact might be inferred. Yet the fact is an essential one, on which evidence, if available, would hardly have been omitted. For all that may be inferred from this record, examination and cross-examination of witnesses on the fact might have demonstrated that there was no similarity, or that there were material dissimilarities. A supposition of what the witnesses had in mind could not be substituted for testimony, and form the basis of a judgment against the defendant on the ground that this truck made the marks, and therefore was approaching the point of collision astride the center of the road. And passing that difficulty, there is no testimony of any indication that the truck which made the marks astride the center to the west swerved in its course before reaching the point of the collision, and this raises a question of causal connection between the collision and a violation of the rule requiring passing vehicles to keep to the right of the center. This vehicle left from nine to eleven feet of roadway open to its left, and it could not be assumed that two vehicles of the size of these, approaching each other in the situation described, on a straight roadway, would fail to pass, unless one or

516

the other swerved. And if this was the case here, and one swerved, it could not be said from any evidence that it was the truck that did so.

Negligence in violating the rule by extending over the center would not give a cause of action unless it did in fact cause the accident and injuries complained of. *Kelly v. Huber Baking Co.*, 145 Md. 321, 336, 125 A. 782; *Hopper, McGaw & Co. v. Kelly*, 145 Md. 161, 169, 125 A. 779; *Morrison v. Clark*, 196 Ala. 670, 676, 72 So. 305; *Needy v. Littlejohn*, 137 Iowa 704, 710, 115 N. W. 483. And the evidence produced in this case—all the evidence that could be produced, perhaps—to prove causal negligence in the driving of this truck when approaching and reaching the point of collision does not, we think, rise above speculation and conjecture. "There must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act; and even a scintilla of evidence or a mere surmise that there may have been negligence on the part of the defendant will not justify the court in submitting the case to the jury. There must be, in a case like the present, some reasonable evidence of well defined acts of negligence, as the cause of the injury complained of." *Balto. & O. R. Co. v. State, use of Savington*, 71 Md. 590, 599, 18 A. 969, 971; *Balto. & O. R. Co. v. Good*, 75 Md. 526, 537, 24 A. 14; *Lowenthal v. Backus Motor Co.*, 140 Md. 33, 37, 116 A. 834; *Realty & Mortgage Co. v. Ulrich*, 164 Md. 666, 670, 165 A. 708.

The court concludes that a verdict for the defendant should have been directed as prayed; and, this being true, no other rulings brought up for review need be discussed.

*Judgment reversed, without a new trial, with costs.*

URNER, J., dissents.