STATE, USE OF RACHEL McKEE BALDERSTON
ET AL. *v.* EDGAR P. HOPKINS

[No. 55, October Term, 1937.]

*Decided January 12th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*G. Elbert Marshall* and *John D. Alexander,* with whom were *Wm. Pepper Constable* and *Edward D. E. Rollins* on the brief, for the appellants.

*W. Hamilton Whiteford* and *Omar D. Crothers, Jr.,* with whom was *Oliver S. Mullikin* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This case is the result of a collision of two trucks, driven respectively by Richard M. Balderston and the defendant, Edgar P. Hopkins, on the 22nd day of June, 1936, in which Mr. Balderston was instantly killed. At the conclusion of the plaintiff's case, the defendant offered a prayer for a directed verdict on the ground that there was no legally sufficient evidence of his negligence, which was granted, and from a judgment in his favor the plaintiffs appeal. The only living eye-witness is the defendant.

The defendant, Edgar P. Hopkins, between 5:30 and 6 o'clock, on the morning of June 22nd, 1936, was driving his truck south on a gravel road, known as the Blythdale-Battle Swamp Road, between the towns of Rising Sun on the north and Perryville on the south, in Cecil County. The truck was a Ford one and a half ton dual-wheel dump truck, and was loaded with five tons of gravel. Richard M. Balderston was driving north a lighter Ford "Pick-up" truck. Whether loaded or not does not appear; but he used it to haul milk every day for his brother, Lloyd Balderston. The extreme width of the Hopkins truck was six feet eight inches; of the Balderston truck, five feet seven inches. The trucks collided about four miles south of Port Deposit. The road at the place of collision was seventeen and a half feet wide; dense woods on both sides, the underbrush being close to the edge of the road. When the trucks

stopped the Balderston truck was off the east, its right, side of the road, the left front wheel "sitting out slightly on the edge of the highway," indicated on a sketch by the brother, Lloyd Balderston, at or near a telephone pole, and the Hopkins truck was sixty feet south on the same east side of the road, headed southeast, one-third off the road, with its front wheels imbedded partly in a clay and gravel bank. The pole was seventeen inches off the easterly edge of the road, and the Balderston truck stopped seven feet north of it. The decedent's brother, Lloyd Balderston, who lived about six miles away, arrived at the scene of the accident about 6:30 o'clock. He testified that he traced wheel marks from a furrow made by the right rear tire of the Balderston truck from a point seven feet north of the pole to the end of the road ten feet south of it; there were no marks on the gravel road. Hopkins had made a statement to a traffic officer that his truck had gone thirty-eight feet after the collision. Assuming that the sixty feet were measured from the rear of the Balderston truck to the left side of the Hopkins truck, and subtracting seventeen feet plus thirty-eight feet from sixty feet, it would leave a space of five feet south of the mark to which Lloyd Balderston testified in which the plaintiffs contend the collision occurred, but to that might be added the length of one or both trucks, and we are not informed as to their lengths. The plaintiffs assume that the point at which the track from the right rear wheel of the Balderston truck intersected the east edge of the road is the point at which the collision occurred, and, therefore, the defendant's truck was five feet over the center line of the road, and this encroachment, and violation of the center line rule (Code [Supp. 1935] art. 56, sec. 209, Act of 1929, ch. 224), was the cause of the accident. These automobile accidents, where no eye-witnesses testify, are not so simple problems in arithmetic. As said in the recent case of *Shafer v. State, use of Sundergill,* 171 Md. 506, 507, 514, 189 A. 273, 276, "In the marks on the side of the road * * * the court finds no evidence legally sufficient to indicate

the cause of the collision. They do not carry the view back of the fact of a collision throwing the vehicles to the one side. There may be room for conjecturing the cause, but nothing more. And 'in matters of proof we are not justified in inferring from mere possibilities the existence of facts.' *Balto. & O. R. v. State, use of Savington*, 71 Md. 590, 599, 18 A. 969." There were no marks on the road to indicate just where the trucks were immediately before or at the time of collision, as in *Wolfe v. State, use of Brown*, 173 Md. 103, 194 A. 832, 837, which distinguishes it from the *Sundergill* case, *supra;* *Williams v. State, use of Ellis*, 161 Md. 39, 155 A. 339. One fact we do know, and we get this from the photographs, and that is that, when the collision occurred, the trucks were side by side, but unfortunately too near each other.

There are other facts in evidence which add to the confusion and doubt as to just how this accident could and did happen. A witness, Ray Blivens, testified that he lived on a farm along the Battle Swamp Road, in a house located about one hundred yards from the road, and near the scene of the collision, which occurred about 5:30 o'clock. While at breakfast he saw two trucks going south, one a red truck driven by the defendant Hopkins, and the other a green truck driven by (William) Burlin; they were about twenty feet apart. His attention was attracted by the noise they were making. Asked if they were "kicking up any dust," he said "Much." When he saw them they were "about three hundred yards" from the scene of the accident; the next thing he heard was "the crash." He saw the trucks as "they just flashed by," and could see them for "a distance of thirty feet."

Harry J. Carroll testified that he lived about a quarter mile north of the scene of the accident in a house on the west of and ten or twelve yards from the road; "What aroused my attention to them was blowing the horn. I then walked out on the porch and saw these two trucks going down the road. They were very close to one another as far as I could see; side by side I believe. * * * After those two trucks, one of which Mr. Hopkins was

driving, had passed my place, I didn't hear anything. * * * there was dust, plenty of it, which was made by the trucks." He did not hear of the accident until a half hour later. Mrs. Carroll testified: "Just a short time after they went by I heard a crash or something like a spill. * * * The condition of the air after they passed my place was dusty like. My attention was called to those trucks as they went by by hearing them coming and the horn blowing. I guess that was the first thing. They were pretty close. I wouldn't like to say whether they were in front of each other, or side by side. I know they was right close."

Through Marlin D. Brubaker, a sergeant of the state police, there came into the evidence a statement which had been made for him by the defendant, Hopkins, in which he said he was going, at the time of the collision, between thirty and thirty-five miles per hour, and that he "didn't see the Balderston truck until it was within five feet in front of his truck." Over the objection of the plaintiffs, the entire statement was read (22 *C. J.* 411-415; *Turner v. Jenkins,* 1 H. & G. 161; *Simmons v. Haas,* 56 Md. 153; *Askin v. Moulton,* 149 Md. 140, 146, 131 A. 82), and an exception taken, but it is not necessary, in the view we take of the facts presented by the plaintiffs, to consider the self-serving or qualifying statements made.

The plaintiff offered in evidence two photographs of the Balderston truck and one of the Hopkins truck. They show that the extreme front and rear ends of both trucks were not damaged, and the bumpers were not only not bent, but apparently were not touched. The damage to the Hopkins truck was to the left headlight and left front fender; the left front wheel and tire were bent under the truck; the cab was not damaged except for some cracks in the windshield. On the Balderston truck the left front fender and lamp were badly damaged; the left side of the cab and left door were crushed; there were red paint marks on the cab, evidently from the body of

the Hopkins truck. It was what railroaders call a "side-swipe."

It is a rational inference from this evidence that the cause of the accident was the cloud of dust raised by the Burlin truck, in which both Hopkins and Balderston became so enveloped that the view of both drivers was so limited and obscured that neither was aware of the proximity of the other in time to avoid the collision. For either of them to drive blindly or under conditions that obscured his view was negligence. *Edwards v. State, use of Guy,* 166 Md. 217, 170 A. 761. Conditions were the same for the Balderston truck as they were for Hopkins. There may have been concurrent negligence (*Oberfeld v. Eilers,* 171 Md. 332, 189 A. 203), for which neither could recover, or one of them may have been negligent and not the other, but legally sufficient evidence as to either is not disclosed by this record. It may be said here, as in the case of *Balto. & O. R. Co. v. State, use of Savington,* 71 Md. 590, 599, 18 A. 969, 971, often cited and quoted by this court, "There must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act; and even a scintilla of evidence or a mere surmise that there may have been negligence on the part of the defendant will not justify the court in submitting the case to the jury. There must be, in a case like the present, some reasonable evidence of well-defined acts of negligence, as the cause of the injury complained of." And, as said in *Shafer v. State, use of Sundergill,* 171 Md. 506, 516, 189 A. 273, 277, "the evidence produced in this case * * * to prove causal negligence in the driving of this truck when approaching and reaching the point of collision does not, we think, rise above speculation and conjecture," and left nothing for the trial court to do but grant, as it did, the defendant's prayer for a directed verdict. This conclusion makes unnecessary consideration of the exceptions on the evidence, though we do not find in any of them reversible error.

*Judgment affirmed, with costs.*