## WILLIAM H. GLOYD *v.* ALVIN L. WILLS

[No. 76, October Term, 1941.]

162

*Decided January 13, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, and MARBURY, JJ.

*James H. Pugh* for the appellant.

*Robert Peter*, with whom were *Henry I. Quinn* and *Richard W. Galiher* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Suit was brought in the Circuit Court for Montgomery County by the appellant against the appellee for personal injuries sustained as the result of an automobile accident between the car in which the appellant was riding as a passenger, and the car owned and operated by the appellee. At the trial the appellee offered a demurrer prayer at the conclusion of the plaintiff's evidence. This prayer was granted by the trial court, and a verdict given, under instructions of the court, in favor of the appellee. From a judgment for appellee for costs on this verdict, the appeal is taken here.

From the testimony it appears that the appellant and Charles Reed, who was the driver of the car in which he was riding at the time of the accident, both lived in Gaithersburg. At ten o'clock at night they left Gaithersburg for Washington. Later they started back from Washington. When they reached a point on the Rockville Pike known as Corby's Hill, the appellant dozed off, and the next thing he knew that happened was the impact of cars. The appellant got out, and found the automobile in which he had been riding up against a bank, and the appellee's car in the center lane. The only other person, who was in the accident and who testified, was a passenger in the car of the appellee. They had been at the roadside theatre, which is just off the Rockville Pike, rehearsing a play. He left with the appellee about one twenty-five or one-thirty on the morning of June 10, 1940, and was sitting on the front seat with the driver and another passenger. He had no recollection of the accident at all, and apparently was rendered unconscious.

He went to see the appellee about two weeks after the accident at which time the appellee was in a wheel chair. The conversation he had with the appellee at that time is relied on by the appellant as an admission. This conversation is as follows:

"Q. (By Mr. Pugh) Did you have any conversation with him on that occasion? A. Yes, sir, I did. Naturally the boy was in the wheel chair, and the course of the conversation ran to the accident.

"Q. What, if anything, did he say about it? A. In connection with that accident?

"Q. Yes, sir. A. Marshall personally said to me that he did not remember seeing the car coming toward him, and that he could not decide the fact; that he couldn't remember whether he was on the wrong side of the road or not. He could not say he was on the right side, and could not say he was on the wrong side of the road. * * *

"Q. What did he say, if anything, about it at the time of your visit? A. He said, on the occasion of my visit to his house, he might have been tired, and maybe that had something to do with his not remembering what he saw, and then after that his father came in."

The only other testimony bearing on the cause of the accident is that of the officers of the Montgomery County police force, who arrived at the scene of the accident at one forty-five o'clock on June 10, 1940. They testified that at the scene of the accident there was a three lane road. The two outside lanes are each ten feet, six inches wide, and the middle lane is eleven feet wide. When they arrived, the appellee's car was headed towards Bethesda, and the car in which the appellant had been riding was headed towards Rockville. The appellee's car was on an angle, the front, two or three feet in the middle lane, the left front, fifteen feet, six inches, from the left side of the road going towards Bethesda, and the right side, fourteen feet six inches, from the right side of the road. The left rear was twenty feet from the left side of the road, and the right rear was seven feet, six inches, from the right side of the road. This would place the left

side of the appellee's car in the middle lane, the front farther over than the rear. There was also either oil or water from the radiator in front of the car in the middle lane, but this was not measured. It was stated to be about two or three feet from the inside of the middle lane. The left front wheel of the appellee's car was mashed into the body between the front wheel and the door. The left front of the appellant's car was smashed in, and this car had then gone into the bank on its right side of the road.

The burden of proof on the plaintiff in a case of this nature is to show that the defendant was guilty of negligence directly contributing to the accident. The mere happening of the event does not connote negligence. Neither does the evidence of negligence impose a legal liability. The negligence must have caused the injury.

In the case before us the appellant relies upon two facts to sustain the burden of proof imposed on him. One is what he calls the admission of the appellee, and the other is the location of the cars immediately after the accident.

We have included in this opinion the entire testimony relied on to show admissions made by the appellee. These admissions are of a lack of memory and of a tiredness, which he says might have caused that lack of memory. Nothing was said by him as to which side of the road he was on except that he could not remember and was not able to say. Nothing was said by him as to the cause of the accident, and while he said he was tired and gave this as a possible reason for his lack of memory, he did not suggest that his weariness in any way contributed to the accident. We are unable to find in this conversation any admission which tends to show any want of care on the part of the appellee.

The evidence as to the location of the cars is strongly relied on to show that the appellee's car was in the center lane at the time of the impact. It is true that evidence of physical conditions surrounding the scene of an accident is frequently admitted under proper precautions

as to the time of observation, and the connection of the facts testified to with the accident itself. Testimony of marks upon the road clearly shown to have been made by one of the cars in the accident is admissible, but this court has recently said that reliance upon such evidence alone is beset with dangers, and has laid down the rule in the case of *Shafer v. State,* 171 Md. 506, 509, 189 A. 273, 274, in the following words: "It would be legally sufficient or insufficient in a particular instance according as it might or might not rise above speculation and conjecture on what had taken place, and so afford the rational basis needed for an adjudication that the defendant's agent was guilty of negligence which produced the accident."

So many factors enter into the movement of cars after accidents that it cannot be laid down as a general rule that the position of a car after an accident necessarily proves anything with respect to its position before the accident, nor does the location of the damage to each of the cars in a collision necessarily prove anything about the location where the collision took place. In some cases the physical evidence might be persuasive, and in other cases the physical evidence might be capable of many different interpretations. *State v. Hopkins,* 173 Md. 321, 196 A. 91.

In a case like that before us where there is nothing but physical evidence, great care should be taken not to permit the jury to speculate on possible causes of which there is no tangible proof. The physical evidence may be sufficient to permit the jury to find that the appellee's car was partly in the center lane when the impact occurred. The center lane in a three lane road is not supposed to be invaded by an automobile except when overtaking another one or preparing for a left turn or unless there is some sign-posting allocating such lane to traffic moving in the same direction. Code, Art. 56, Sec. 238(c). There is no evidence in this case that any of these three conditions obtained. Therefore, we may go a step further and say that the evidence permits a finding

that the appellee's car was in the center lane at the time of the impact under circumstances which constitute a violation of the rules of the road. That, however, is not of itself sufficient to support an action for injuries. It must be shown that the violation of the rule of the road was the proximate cause of the injury. *Gittings v. Schenuit,* 122 Md. 282, 90 A. 51; *Hopper, McGaw & Company v. Kelly,* 145 Md. 161, 125 A. 779; *Greer Transportation Company v. Knight,* 157 Md. 528, 146 A. 851.

This rule has not been modified or changed in any way by the decision of this court in the case of *Consolidated Gas, etc., Company v. O'Neill,* 175 Md. 47, 51, 200 A. 359, 361. In that case an automobile came out of the line of traffic and across the center line of the road and struck another car causing injuries. The court cited the rule of the road providing that vehicles should keep to the right of the center of the highway and said that "one who violates this statute does so at the risk of being held for negligence where collision and resulting injuries are directly and proximately caused by such violation." Citing several cases in support of this statement, the court then said: "The presence of the defendants' automobile on the left side of the road, and the fact that it had been driven out of the line of traffic and across the highway and into the plaintiff's car, in the absence of other facts, would constitute evidence of negligence." In that case, however, the evidence showed that as a result of crossing the center line of the road, the offending car struck another car and caused the injury. This put upon the driver of the car the necessity of showing that he was not negligent, which he attempted to do by setting up evidence of an emergency. There was no contention that crossing the line was not the cause of striking the other car and was not the proximate cause of the injury. The contention was that the driver of the car was not guilty of negligence in crossing the line under the circumstances.

In the case before us we are asked to hold that the mere presence of a car a few feet across a line, which it was

not supposed to cross except under certain circumstances not shown to be present, and the evidence of a grease or oil spot coming from that car, which is also located several feet across that line, constitute evidence, not only that the car crossed the line before the accident, but that such crossing was the proximate cause of the injury to the appellant. There must be some proof, which reasonably tends to show not only that there was a violation of the rule of the road but that such violation was the cause of the accident. We are unable to find such evidence in the record.

It is the duty of the plaintiff in any given case to produce the necessary proof in that case. It is unfortunate if there are no eyewitnesses, and unfortunate if the physical facts do not tend to support the theory upon which he bases his action. Nevertheless, defendants cannot and should not be held liable unless it is shown that they are guilty of some negligence, or want of care, which produces the unfortunate result. If such evidence is not forthcoming, the jury cannot be allowed to guess at occurrences of which there is no proof.

There was no error in the ruling of the court below in granting the appellee's prayer to take the case from the jury, and the judgment will, therefore, be affirmed with costs to the appellee.

*Judgment affirmed, with costs to the appellee.*