TERRY *v.* O'NEAL, ADMINISTRATRIX, ET AL.

[No. 114, October Term, 1949.]

682

*Decided March 10, 1950.*

*Rehearing denied April 11, 1950.*

684

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Robert E. Coughlan, Jr.,* and *Walter L. Green,* with whom were *Edward C. Bell, Jr.,* and *Green, Whalin, Babcock & Bell* on the brief, for the appellant.

*Samuel S. Smalkin,* with whom were *Herbert P. Leeman* and *William B. Bowie* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appeal in this case is from four judgments rendered after remittitur against William A. Terry III in a suit in four counts arising out of an automobile accident that occurred on Finn's Lane near East Riverdale, Prince George's County, on August 1, 1947. Barton G. Bryan was killed in the accident and his wife, Clara R. Bryan, suffered injuries that resulted in her death a few hours later. Two of the counts were by the administratrix of each decedent, and two were death actions in the name of the State, for the use of their infant daughter, alleging that Terry was operating the automobile in a negligent manner and that the decedents were passengers therein. The case was removed from the Circuit Court for Prince George's County to the Superior Court of Baltimore City and tried before a jury.

Terry, called by the plaintiffs, testified that on the evening of July 31, 1947 he had the use of his father's

Buick coupe and a date with a young girl, Katherine Raxter at 9 P. M. Terry was 21 years old and unmarried. They drove to the Lanham Tavern. There he met Barton Bryan, whom he had known for six years, and Mrs. Bryan, whom he had known since their marriage. He had driven them in his father's car on previous occasions. They all drove to Snug Harbor, where Bryan got out to see someone for a few minutes. They then drove to the Starlight Inn. Terry drove the car the whole time, with the girl on his right, and Mrs. Bryan sat on her husband's lap as the car had no rear seats. They arrived at the Starlight Inn between 12 and 1 A. M. and Terry bought a round of drinks. Bryan then ordered a round, but Terry and Katherine went outside in the car without drinking them. Terry testified that Bryan asked him to let him drive the car and he put the keys on the table although he had never before allowed Bryan to drive, in the numerous times they had been out together. He knew that Bryan had no car of his own. He did not inquire whether Bryan had a driver's license. He was corroborated as to the keys by a waitress who knew Terry and testified she saw a key-case on the table after Terry and the girl left. The Bryans remained at the table until about 2 A. M., the closing hour, then went outside. Terry testified that Mrs. Bryan got in on the right and sat in the middle, Bryan behind the wheel, while Katherine sat on Terry's lap. They started for the Bryans' home. Terry testified he remembered nothing after they crossed the railroad tracks about a half mile from the Inn, until he came to his senses in the hospital two or three days later. The crash occurred about 4 miles from the Starlight Inn.

A witness, Savery, testified that he drove west on Finn's Lane about 2:30 in the morning, on his newspaper route, and stopped for a cup of coffee. When he retraced the same course about 2:55 A. M. he saw a Buick coupe in a ditch. This car had evidently been heading east on Finn's Lane, a macadam road 20 feet wide, and at a point where the road bends to the right, had gone

off the curve to the left, into a deep ditch and gully, and collided with a telegraph pole. The car was entirely off the road on its left side. He opened the right door and saw a girl draped over the steering shaft. He heard groans from someone on the ground outside the car on the left. He left for assistance, and when he returned police officers were there.

Officer King testified that he was cruising with Officer Little in a police car and got word of the accident over his radio about 3:30 A. M. They arrived at the scene before the ambulance came. They found Katherine Raxter's body over the steering post. The Buick had evidently gone off the curve so that its left wheels went into the ditch, causing it to heel to the left at an angle of about 60° from the vertical. In this position it went into a telegraph pole from 3 to 10 feet off the highway at such an angle that the front of the car missed the pole, but the impact was upon the left support of the windshield, which was completely demolished. The top and whole left side and door of the car were stripped off and pushed behind the rear wheels. The steering wheel was shattered and the driver's seat broken off. Bryan was lying outside the car, with Mrs. Bryan partly on top of him, alongside the driver's seat, Terry just ahead of them opposite the steering post. Savery testified, however, that Mrs. Bryan was behind the broken driver's seat on the floor of the car, with Bryan underneath her, Terry with his feet in the car, just ahead of them on the ground. Officer King testified that Terry was groaning and threshing around, so they moved him first on a stretcher. He was cursing, fighting and trying to go back to the car, so they strapped him down to prevent further injury. Before he was placed in the ambulance Officer King testified over objection, that Terry told him it was his father's car and he was driving it. He also said he wanted to see "What is the matter with the other people". No other witness heard this conversation. Savery said Terry was incoherent, swearing and hard to manage.

After remaining at the scene until photographs had been taken, the officers went to the hospital where Terry was in the emergency room, with Dr. Mayland attending him. This was about 45 minutes later. Officer Little testified he asked Terry for his driver's license and he said it was in his wallet, which Dr. Mayland produced. He asked him about the registration card, and Terry said his father or mother had it; that the car belonged to his father. He asked him who was driving the car and Terry replied: "I was". His answers were perfectly clear and intelligible. This testimony was admitted subject to exception, and there was a motion to strike it out.

Dr. Mayland testified that Terry was suffering from cerebral concussion without skull fracture, and lacerations of the head and nose. There were slivers of glass, with a black coating on one side in the head wounds. There were no chest injuries. Terry could answer questions, but was "not in his right senses," "irrational and difficult to handle", "not oriented as to time and place * * * from thirty-six to forty-eight hours following the accident". There was an odor of alcohol on his breath. He heard Terry tell Officer Little at least twice, that he was driving the car. Before the officer came in, he had asked Terry his name, and did not understand the answer. When he looked in the wallet and saw his name on a card, he realized that Terry had given the right name.

Mrs. Bryan died of head injuries without ever regaining consciousness. Katherine Raxter was killed in the crash, as was Barton Bryan. Bryan's death certificate stated that his injuries were a crushed chest and fractured skull. The certificate also stated that he was a passenger in the car, presumably on information given by Terry, the only survivor.

The appellant contends that the statements made by Terry to the police officers should not have been admitted. We find no merit in that contention. Regardless of whether the statements were admissible as spon-

taneous utterances or verbal acts (Wigmore, Evidence, 3d Ed., §§ 1747, 1750, 1756), they were admissible as admissions. Wigmore, Evidence, 3d Ed., § 1048; *Wolfe v. State,* 173 Md. 103, 110, 194 A. 832, (statement as to speed made to a police officer). In *State to Use of Mitchell v. Jones,* 186 Md. 270, 276, 46 A. 2d 623, 625, 47 A. 2d 71, a non-jury case involving an automobile accident, we said, speaking through Judge Markell: " 'There is a general distrust of testimony reporting any extrajudicial oral statements alleged to have had been made, including a party's admission.' Nevertheless, subject to limitations not applicable in this case, oral admissions of a party 'are universally deemed admissible' and legally sufficient to prove facts admitted. Wigmore, Evidence, 3d Ed., §§ 1056, 1048, 2075; *Lambros v. Coolahan,* 185 Md. 463, 468, 45 A. 2d 96, 97, 98. We may assume (without deciding) that Jones' 'admissions' (including admissions by Williams in Jones' presence) are legally sufficient to show that at the time of the accident Williams was engaged in Jones' business. For reasons already indicated, we can not accept these 'admissions' as in fact outweighing the opposing testimony and the inherent probabilities." In that case, of course, we were passing upon the weight of the evidence. We affirmed the finding of the trial court.

The appellants contend, however, that the statements should have been excluded because of the testimony that Terry was not in his right mind when they were made. However, there was undisputed testimony that Terry understood what was said to him and answered other questions intelligibly and accurately. Even imbeciles and lunatics have been permitted to testify where there is a showing of probable capacity. "A witness should not be debarred from testifying on the ground of mental incapacity unless the proof of such disqualification is clear and conclusive." *Johnston v. Frederick,* 140 Md. 272, 281, 117 A. 768; *Weeks v. State,* 126 Md. 223, 227, 94 A. 774; Wigmore, Evidence, 3d Ed., § 492. The case of *Ammundson v. Tinholt,* 228 Minn. 115, 36 N. W.

2d 521, 7 A. L. R. 2d 1318, relied upon by the appellant is distinguishable.

The chief contention of the appellant is that, even if the statements were admissible, they are legally insufficient to show that Terry was driving the car. He argues that they are wholly inconsistent with the physical facts. It is true that a strong argument can be based on the position of the bodies and the nature of the injuries, to show that Bryan, with the crushed chest, was behind the wheel, and that Terry, if he had someone on his lap, was in the best position to survive. The facts that he was ahead and on top of the Bryans, and had glass, which may have come from the rear-view mirror, in his head wounds, also tend to corroborate his testimony on the stand. On the other hand, the appellees argue that the careening of the car in the ditch, before the impact with the pole, would have thrown the other occupants to the left, and this may have shielded him from the blow which demolished the roof. We cannot say that this was impossible. Why he should have allowed Bryan to drive the car, if he did, for the first time on that or any other occasion, was never explained. But even if we assume, without deciding, that the only evidence as to who was driving is to be found in his admissions, we think the question as to their weight and credibility was for the jury. *Johnston v. Frederick, supra.* The case of *Potter v. Robinson,* 233 Iowa 479, 9 N. W. 2d 457, while closely in point, was decided by a divided court, and we think the dissenting opinion of the Chief Judge expresses the better view.

The appellant does not contend that there was no legally sufficient evidence of negligence in the operation of the wrecked car. *Scott v. James Gibbons Co.,* 192 Md. 319, 329, 330, 64 A. 2d 117, 122; *Acme Poultry Corp. v. Melville,* 188 Md. 365, 373, 53 A. 2d 1; *Consolidated Gas Co. v. O'Neil,* 175 Md. 47, 51, 200 A. 359. He contends, however, that the court should have instructed the jury that the mere presence of the automobile after the accident on its improper side of the road and in a damaged

condition did not create a presumption of negligence. The court remarked to counsel that the request did not take into account the fact that the car was found completely off the road against a pole. However, the court did charge the jury that the mere happening of the accident created no presumption of negligence. The court declined to charge the jury as to the duty of the decedents to avoid danger by suggestion and protest, because of a lack of evidence of any opportunity to do so, but charged them in general terms as to contributory negligence of the passengers, if they found them to be passengers. We find no error in these rulings.

The appellant sought an instruction to the effect that "in weighing testimony of police officers in this case greater care should be used than in weighing testimony of ordinary witnesses because of the natural and unavoidable tendency of police officers to procure and remember with partiality such evidence as would be against defendant". We think the request was properly refused. Police officers, in the performance of their duty, cannot be characterized as necessarily partial, and in any event, that is a matter of argument and the court properly exercised its discretion to decline to comment on the weight of their testimony.

Finally, the appellant contends that the court erred in declining to instruct the jury that if they should find a verdict in favor of the infant daughter, they could not award damages for the death of both parents, but only for the loss of support of one parent. He contends that this permitted two recoveries for the same loss. The court, however, not only charged the jury as to necessity of finding pecuniary loss in the case of each parent, but amplified his charge on the point by saying: "Of course, the earnings of the father would be used for the support of the entire household, both the mother and the child; so you will have to estimate, in arriving at the amount of damages, if you should find a verdict for the plaintiff, just what that would be, and, also, the value of any services that may be rendered by the mother

and father to the child until that child arrives at the age of twenty-one years". The court was clearly right in declining to rule that there could be no recovery for the loss due to the mother's death. *Davidson Transfer & Storage Co. v. State*, 180 Md. 63, 22 A. 2d 582; Code, Article 67, Section 3. Recovery may be had for either or both. We think the charge as amplified took care of the objection on the ground of duplication.

*Judgments affirmed, with costs.*