ANTONELLI et al. *v.* PUGH, Etc., et al.

[No. 138, September Term, 1962.]

*Decided April 1, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Joseph A. De Paul,* with whom were *Keane & DePaul* and *Edward C. Bell* on the brief, for appellants.

*Hal C. B. Clagett,* with whom were *Sasscer, Clagett & Powers, John D. Fitzgerald,* and *Fitzgerald & Taylor* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

These appeals arise out of a collision between two automobiles, one driven by Stewart J. Whitney, Sr., in which his twelve year old son, Stewart J. Whitney, Jr., was a passenger. The father died before the ambulance arrived and the

son died in the hospital the next day without making any statement. The car, a 1949 Mercury, was owned by Robert J. Pugh, who testified that Whitney was driving it as a convenience to him, so that he could get it home to put in a new transmission, and replace two burnt valves. The other car, a 1955 Packard, was owned by Vincent L. Antonelli, and driven by his daughter Marlene (now Mrs. Thompson), who was seriously injured but survived the accident and testified in the case.

Suits were filed by the administratrix of Whitney, Jr., the administrators of Whitney, Sr., and the State to the use of his widow and living children against the owner and driver of the Antonelli car. The Antonellis in turn sued Pugh and the administrators of Whitney, Sr. The cases were consolidated for trial and submitted to a jury on special issues, after motions for directed verdicts had been submitted by each party and denied. The jury found verdicts in varying amounts in favor of the Whitneys and against the Antonellis, and found for the Whitneys in the suits by the Antonellis. Motions for judgment n.o.v. were overruled, except as to the judgments against Mr. Antonelli, which were stricken on motion to revise. We shall first deal with the question of his liability, as owner of the Packard.

Although his ownership was alleged in the amended declaration, and conceded, there was no allegation or proof of agency. Miss Antonelli testified that she was using the car to visit a friend. The Whitneys relied upon the admitted fact that Mr. Antonelli had signed an application for his daughter, who was under 21 years of age, under Code (1957), Art. 66½, sec. 93. Although not proven until after the trial, it was shown in connection with the motion to revise the judgments, that a certificate of Financial Responsibility had been filed and was in effect at the time of the accident, and hence that he was not liable on the theory of imputed negligence. See *State, Use of Shipley v. Walker*, 230 Md. 133, 137, and Rule 625. We think the trial court did not abuse its discretion in striking the judgments.

The motions for directed verdicts call for a close examination of the evidence. Miss Antonelli was the only eye-witness,

since the occupants of the Mercury died without making any statements and no third person saw the collision. She testified that she was driving west on the Lanham-Severn Road at about 6:15 P.M. on October 24, 1959. She had had a regular driver's license for only ten days. It was raining, but the visibility was good. After she came over the crest of a hill and around a slight curve she started down a slight grade on a straight stretch of road, when "just all of a sudden there was a car almost right in front of me, and he seemed to be going awfully fast." She remembered "trying to turn the wheels to the right and that was it." She testified that she was in her proper westbound lane, driving at a speed of thirty-five miles an hour in what was stipulated to be a fifty-mile zone. She was rendered unconscious by the crash and came to in the hospital.

The testimony on the other side was almost wholly circumstantial. A neighbor who heard the crash and called ambulances testified as to the position of the cars. So did a police officer, Souder, who arrived before the cars were moved, another officer who took photographs, Mr. Antonelli, and a garage man. All agreed that the left fronts of both cars were crushed as far back as the windshields. The paved or macadamized portion of the two-lane road was 22 feet, 4 inches wide, with 8 foot dirt shoulders. There were no skid marks, but the Mercury was entirely off the paved portion of the road on the south side (the Whitneys' lane) with its rear against the bank. The Whitney boy was lying in a ditch beside the Mercury, and a seat cushion was also on the south shoulder. The Packard was also in the eastbound lane on the south side of the road, although its right rear wheel was over the solid yellow center line of the road. Most of the debris was in the eastbound lane, although bits of chrome were scattered over the road, some on the north side. The fronts of both vehicles were in contact. There were two cut marks in the eastbound lane, leading to the left front rim of the Mercury, on which the tire was cut in two. Souder, however, testified that he was unable to locate the point of impact.

The crucial question in the case is whether there was suf-

ficient evidence in the case to support the jury's findings that Miss Antonelli was guilty of negligence and Whitney was not. We think there was. The jury was not bound to believe Miss Antonelli's story, which was not unimpeached, and certainly not undisputed. If the occupants of the Mercury had been alive, failure to produce them might have permitted an inference that their testimony would be unfavorable. Disbelief of Miss Antonelli's testimony that she was in the proper lane might, under the circumstances, amount to belief that she was in the wrong lane. Cf. *Gray v. Dep't of Correction,* 230 Md. 508, 511. Moreover, there was no explanation as to why she did not see the Mercury until the moment of impact. This in itself might be some evidence of failure to keep a proper lookout. This was not a case in which the accident could be found to be inevitable or unavoidable. One or both of the drivers must have been over the center line and hence at fault. The position of the cars on the south side of the road and the location of debris would support a reasonable inference, we think, that the impact occurred there, even in the absence of expert testimony to reconstruct the events leading to the accident. Cf. *Acme Poultry Corp. v. Melville,* 188 Md. 365, 372 and *Melville v. State of Maryland,* 155 F. 2d 440, 442. (C.A. 4th). See also *Terry v. O'Neal,* 194 Md. 680, 689 and *Scott v. James Gibbons Co.,* 192 Md. 319, 330. The case of *Shafer v. State,* 171 Md. 506, relied on by the appellees, was distinguished on its facts in *Wolfe v. State,* 173 Md. 103. Of course, the circumstantial evidence must rise above conjecture. Cf. *State, Use Stickley v. Critzer,* 230 Md. 286. We think it does, under the unusual circumstances of the instant case. It follows that the Antonellis were not entitled to a directed verdict on the strength of her testimony, although it was uncontradicted by any direct testimony. We need not now consider whether the distinction between uncontroverted and uncontradicted testimony is sound or tenable. Cf. *Smith v. Bernfeld,* 226 Md. 400, 405, and *Vogelsang v. Sehlhorst,* 194 Md. 413, commented on in 11 Md. L. Rev. 44. See also *Rickard v. Ellis,* 368 P. 2d 396 (Ore.), note 11 Mich. L. Rev. 198 and *Edelen v. First Nat. Bank,* 139 Md. 413, 419.

The Antonellis contend, however, that the trial court erred

in refusing to grant an instruction that Whitney was guilty of negligence *per se* in failing to wear eyeglasses at the time of the accident, and that the jury were entitled to consider what effect the absence of glasses would have on his driving. These requested instructions were based upon the testimony of Officer Souder that he found on the person of Whitney, Sr., a driving permit issued by the District of Columbia for him to drive, with the restriction that he wear glasses, and that no glasses were found at the scene of the accident or at the hospital. The alleged D. C. permit was not produced or offered in evidence. Mrs. Whitney testified that they had moved to Bowie, Maryland, about the middle of September and he had obtained temporary work as a plumber's helper. He had a chauffeur's license issued by the State of New York, where they had resided for many years, and the license, good until May 31, 1961, was offered in evidence without objection. She testified that her husband had applied for a job as a bus driver in Washington, D. C., and obtained a permit. She did not know if it contained a restriction or not. Her husband never wore glasses, except when reading, and had no eye trouble. He did not obtain a job in the District, although she received a notice for him to report, after his death.

Under the circumstances it seems clear that Whitney was properly driving under his New York license. Code (1957), Art. 66½, sec. 87 (d) exempts a non-resident of Maryland from the necessity of obtaining a Maryland license, if "licensed in his home state * * *." We think the proof shows that New York was still his home state, and that he had not become a resident of, or been employed in, the District of Columbia. Hence the restriction imposed in the District was inapplicable, even if we assume, without deciding, that the restriction would be sufficient to establish his inability to drive in Maryland without glasses, that his eye sight was impaired, or that the failure to use his glasses was a contributing cause of the accident. In any event, all of the evidence was before the jury for consideration. We find no error in refusing the instructions.

*Judgments affirmed, costs to be equally divided.*

HORNEY, J., filed the following dissenting opinion.

To me the effect of the majority opinion is to hold—contrary to the prior decisions of this Court—that the position of the automobiles and the location of the debris, despite the inability of the only expert witness to locate the point of impact, were sufficient to support a reasonable inference that the impact occurred on the south or Whitney side and not the north or Antonelli side of the road.

In these consolidated cases, where the primary questions on appeal concern the refusal to direct a verdict for the *defendants* Antonelli in the case of the Whitneys against them and the refusal to direct a verdict for the *plaintiffs* Antonelli in their case against the Whitneys,[1] it is my opinion that the case of the Whitneys against the Antonellis was improperly submitted to the jury. But all the members of the Court, who heard these appeals, agree that the rulings of the lower court, refusing to instruct the jury concerning the failure of Whitney to wear eyeglasses, and striking out the judgment against the Antonelli-father, were proper.

Other than the testimony of the Antonelli-daughter to the effect that she was driving on her right side of the road and the testimony of the investigating police officer to the effect that it was impossible to determine the point of impact from the physical facts, the only other evidence was the physical facts (and the photographs introduced as exhibits thereof) showing that the Whitney automobile was on the south side of the highway with its rear in the ditch paralleling the shoulder of the eastbound or Whitney lane and was pointed toward the northeast with its left front wheel on the southerly shoulder; that the Antonelli automobile was directly across the Whitney lane facing south with its right rear wheel in the westbound or Antonelli lane; that the left front of each vehicle received the most extensive damage and was so badly

---

1. The designation "Whitneys" is used here for the sake of brevity: actually the defendants in the case of the Antonellis against the Whitneys were the administrators of Stewart J. Whitney, Sr., who was killed in the accident, and Robert J. Pugh, the owner of the automobile that Whitney was driving.

mangled that most of the debris remained crushed against the vehicles; that there was debris "all over the road" but the greater part of such of it as fell on the highway was in the area between the fronts of the two vehicles near the southerly shoulder where the vehicles came to rest after the accident; that there were rim cuts on the south side of the road and shoulder leading to a deflated tire on the Whitney automobile (a fact that the Whitneys do not claim was positive evidence of the point of impact); and that there were no visible brake or skid marks in the area.

The majority bases its holding that the evidence produced was sufficient to support the finding of the jury—that the Antonelli-daughter was guilty of negligence and that Whitney was not—on the following conclusions: that the jury was not bound to believe the testimony of the Antonelli-daughter that she was on her right side of the road and that disbelief of her story amounted to belief that she was on the wrong side of the road; that had the occupants of the Whitney automobile been alive failure to produce them might have permitted an inference that their testimony would be unfavorable; that the failure of the Antonelli-daughter to explain why she had not seen the Whitney automobile until the moment of the impact was some evidence that she had not kept a proper lookout; that this was not a case in which the accident could be found to be inevitable or unavoidable; and that one or both of the drivers must have been over the center-line and hence at fault.[2] But the majority—other than this and the citation of several cases apparently as authority for allowing the case to go to the jury—have not discussed the propriety of submitting the issues of negligence to the jury to be decided by it as questions of fact. To me, however, the evidence presented only questions of law to be decided by the trial court.

The principle of the prior decisions of this Court is that to justify the submission of a question of negligence to a jury,

---

2. It would seem that if there was any evidence—as there may well have been—that both drivers were over the center line, then neither was entitled to recover from the other.

it is necessary that there be some evidence of negligence or evidence from which negligence may be inferred. The rule in an action for damages is that a court is not justified in inferring negligence merely from possibilities; and the test to be applied—whether the question involved is the existence of an injury or its cause—is reasonable probability or reasonable certainty. *Brehm v. Lorenz,* 206 Md. 500, 112 A. 2d 475 (1955) ; *Ager v. Baltimore Transit Co.,* 213 Md. 414, 132 A. 2d 469 (1957). And while it is true that a case should not be withdrawn from the jury if there is any evidence (however slight) tending to prove negligence, *Ford v. Bradford,* 213 Md. 534, 132 A. 2d 488 (1957), a mere scintilla of evidence or a mere surmise that there may have been negligence on the part of a defendant does not warrant submission of the case to the jury. *Olney v. Carmichael,* 202 Md. 226, 96 A. 2d 37 (1953) ; *Shafer v. State use of Sundergill,* 171 Md. 506, 189 Atl. 273 (1937).

When these principles are related to the evidence produced at the trial of these consolidated cases and such inferences of fact as are fairly deducible therefrom, it seems apparent to me that the Antonellis were entitled to a directed verdict in their favor in the case of the Whitneys against them.

In a case where there is nothing but physical facts to support the existence of negligence, it is imperative that the trial court exercise the greatest of care to prohibit the jury from speculating on the possible causes of an accident of which there is no tangible proof. *Gloyd v. Wills,* 180 Md. 161, 23 A. 2d 665 (1942). This becomes even more imperative in a case such as this where, on one hand, the position of the automobiles and the location of the debris without any substantiating evidence was insufficient to permit a judicial determination as to where the collision occurred, and, on the other hand, the absence of brake or skid marks and the inability of the expert witness to fix the point of impact was clearly indicative of the fact that it was impossible to determine where the collision had occurred. The absence of brake or skid marks, even without the expert testimony, was enough to prohibit the case from going to the jury. In *State for use of Balderston v. Hop-*

*kins,* 173 Md. 321, 196 Atl. 91 (1938), where, as here, there were no marks on the road to indicate where the motor vehicles were immediately before the collision, it was held that the position of the trucks after the accident on the same side of (and partly off) the road did not indicate that the defendant's truck was over the center line of the road at the time of impact, and the opinion distinguished *Wolfe v. State use of Brown, infra,* where the point of collision was established by a large quantity of glass and other debris on only one side of the road. (See pp. 204, 205 of this opinion.)

The cases cited by the majority for the proposition that the position of the automobiles and the location of the debris was sufficient to support a reasonable inference as to where the impact occurred convince me that the case of the Whitneys against the Antonellis should not have been submitted to the jury.

Although the test laid down in *Acme Poultry Corp. v. Melville,* 188 Md. 365, 53 A. 2d 1 (1947), cited by the majority, is to the effect that evidence is sufficient to take a case to the jury if the physicial facts rationally permit an inference from the "preponderance of probability," it is significant to note that it was the testimony of an expert witness, pointing to one of the alternatives the jury had to decide, which induced this Court to reverse the judgment entered on a directed verdict for the appellee.

The facts in *Melville v. State use of Morris,* 155 F. 2d 440 (C.C.A. 4th 1946) [3] and *Scott v. James Gibbons Co.,* 192 Md. 319, 64 A. 2d 117 (1949), also cited by the majority, have little similarity or analogy to the facts in the cases at bar. In *Melville,* the judgment for the appellee was affirmed because the physical facts (the position of the trucks on the highway after the collision forming a rough V and the location of the debris within the V), plus the evidence as to the course and speed of the Melville truck immediately before the collision, indicated that the southbound Melville truck was largely or wholly in the eastern (improper as to it) lane while the north-

---

**3.** This *Morris* case (155 F. 2d 440) apparently arose out of the same accident as that involved in the *Acme* case (188 Md. 365).

bound Acme truck was also in the eastern (proper as to it) lane. In *Scott,* the judgments for the appellee for costs were reversed because the existence of skid marks showing that the tractor was traveling on its wrong side of the road and that the automobile was traveling on its right side of the road was sufficient evidence of negligence to take the case to the jury. The case of *Terry v. O'Neal,* 194 Md. 680, 72 A. 2d 26 (1950), involving a question as to whether an admission was at odds with the physical facts does not appear to have a direct bearing on the questions of negligence in these cases.

The case of *Shafer v. State use of Sundergill, supra,* (171 Md. 506), as the majority point out, was distinguished on the facts in *Wolfe v. State use of Brown,* 173 Md. 103, 194 Atl. 832 (1937), and properly so. But the distinction this Court drew between these two cases does not mean, as the majority seem to intimate, that the *Wolfe* case was authority for allowing the case of the Whitneys against the Antonellis to go to the jury. In *Shafer,* where broken glass was scattered near the wrecked automobile, but there was no evidence as to the quantity or character of the glass, or whether it was from the automobile or the truck, or whether it was from the windshield or the headlights, it was held that the mere presence of glass near the automobile afforded no proof that the collision occurred near that point. In *Wolfe,* where there was an admission by Wolfe that he had pulled to the left "directly in the path of Brown's car," in addition to broken glass in a "pretty heavy pile" along with pieces of metal from Brown's automobile on his side of the road, and only small particles of glass on Wolfe's side of the road, it was held that the evidence was sufficient to take the case to the jury. Obviously the holdings in both *Wolfe* and *Shafer* were proper under the distinctive facts in each case, but to me it seems apparent that the case of the Whitneys against the Antonellis is more in line with *Shafer* than with *Wolfe.* Moreover, as was hereinbefore stated (on p. 203 of this opinion), *Wolfe* was distinguished on its facts in *State for use of Balderston v. Hopkins, supra* (173 Md. 321), because, in the absence of tire marks to indicate the point of impact, the position of the trucks after

the accident did not indicate where the vehicles were immediately before the accident. *Here,* the absence of brake or skid marks plus the fact that the expert witness was unable to fix the point of impact from the physical facts, is why in my opinion the judgment in the case of the Whitneys against the Antonellis should be reversed without a new trial.

But because the jury chose to disbelieve the testimony of the Antonelli-daughter that she was driving on her right side of the road, and there was no other evidence that Whitney was guilty of negligence (for much the same reasons that there was no evidence of negligence on the part of the Antonelli-daughter in the case of the Whitneys against the Antonellis), it would seem to be futile to reverse the judgment in the case of the Antonellis against the Whitneys and remand the case for a new trial: it is therefore my belief that the judgment in this case should be affirmed.