## BOARD OF COUNTY COMMISSIONERS OF FREDERICK COUNTY, ET AL. *v.* DORCUS, ETC., ET AL.

[No. 456, September Term, 1966.]

252

*Decided June 27, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*W. Hamilton Whiteford,* with whom were *Samuel W. Barrick* and *Norman I. Broadwater* on the brief, for appellants.

*Leroy W. Preston,* with whom were *O'Connor & Preston, Edwin F. Nikirk, W. Jerome Offutt,* and *Irving M. Einbinder* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

On June 23, 1965, in Frederick County, Maryland, Michael D. Dorcus was killed as the result of a collision between the vehicle he was driving on Dorcus Road and a truck owned by the Board of County Commissioners of Frederick County and driven by Guy E. Haines, an employee of the county, appellants. Dorcus' surviving wife, her two children by her as next friend, and she, as administratrix of her deceased husband's estate, appellees, sued the Board and Haines in the Circuit Court for Frederick County. The case was removed to the Circuit Court for Washington County for trial, and the jury found in favor of the appellees and awarded the widow $110,000, one child $17,000, the second child $19,000, and the administratrix $731 for the funeral expenses.

Chief Judge McLaughlin denied generally appellants' motion for judgment n.o.v. and in the alternative for a new trial, but on September 14, 1966, he ordered a new trial in the widow's case unless she filed a remittitur of $35,000. The remittitur was filed in accordance with the order of September 14, and judgment was made final for the appellees in the respective amounts of the jury's awards less the amount remitted. In the afternoon of September 20, 1966, the judge modified his order of September 14 changing the amount of the remittitur from $35,000 to $27,500, thereby increasing the judgment as to the widow from $75,000 to $82,500, or in lieu thereof ordered a new trial. However, in the morning of the same day the appellants noted an appeal to this Court. On September 22, the court granted appellees' petition to withdraw the remittitur of $35,000 and permitted the filing of a remittitur in the amount of $27,500 in accordance with the order passed on September 20 unless cause to the contrary be shown. After the appellants had answered, alleging that the court had no authority to amend the original order of September 14 after an appeal had been filed, Judge McLaughlin expressed doubt whether the trial court retained any jurisdiction after the appeal was noted; but he refused to rule upon whether change of the remittitur was effective. Since the case was going to the Court of Appeals, he thought answer could be made when the case was decided, provided the decision of this Court sustained his rulings on the law applicable to the case.

Michael D. Dorcus was killed while driving a jeep truck in a southerly direction on Dorcus Road at about 4:00 p.m. when his vehicle collided with a two and one-half ton Chevrolet dump truck with dual rear wheels, driven by Haines in a northerly direction. Dorcus Road runs in a southerly direction from the Copper Mine Road which runs east and west. The collision occurred on Dorcus Road approximately 350 feet south of its intersection with Copper Mine Road. At the point of impact Dorcus Road had a thirteen foot wide macadam surface with several feet of grass shoulders with protruding growth on each side, and the road ran down into a hollow formed by descending grades. In the hollow there were two large trees—an ash of substantial diameter about five feet off the east side of the

macadam and a sizeable maple seven feet south of the ash and approximately the same distance from the macadam as the ash on the same side of the road. The road is a lightly traveled county road.

The Dorcus vehicle scraped the truck behind the cab, and the main point of impact was at the rear dual wheels of the truck. The impact tore off the rear axle of the truck. However, the truck's momentum carried it fifty to fifty-five feet off the road on the east side. The jeep went off the road on the west side. The accident occurred on a clear day, and there were no eye witnesses to the collision other than the truck driver and the deceased.

Appellees produced evidence and testimony to show that the county truck was on the wrong side of the road. This evidence, appellants contended at trial in support of their motion for a directed verdict, which was denied by the trial court, and on appeal was insufficient to take the case to the jury, so that the court erred in allowing the jury to speculate as to the actual position of the truck, and as to whether the position of the truck at the time of the accident was the proximate cause of the collision.

Appellees' first witness, Reese Poffenberger, at the time of the accident was sitting in his yard about 700 feet from Dorcus Road. Although he did not see the collision, he did see the Dorcus jeep forty to fifty feet away from the hollow where the collision occurred. When he heard the collision he drove to the scene of the accident. He saw the two vehicles on either side of the road and observed the truck's rear axle and wheels against the ash tree, the first tree as one approaches from the south, with the bark knocked off of the tree where the wheels struck. He concluded that the dual wheels of the truck left deep tire marks on the road to the left of center in the southbound lane of travel. Poffenberger described the marks as fresh and stated that they stopped at the first tree. He also saw a fresh oil or brake fluid stain in the road. On cross-examination, he stated he could not remember if the right side mirror on the truck was damaged.

Max Poffenberger arrived at the scene of the accident at about 4:30 p.m. He also saw dual tire marks which he described

as fresh and as left of center of the road. He estimated the marks' length at 100 feet long. He said:

> "I travel that road every day when I go to work and I never noticed them there before, and they weren't there before that day. * * * [T]he marks stopped. Actually right at the last tree."

And he stated,

> "Right after the tire marks stopped, within five feet, why then the macadam was torn up in the road where the truck had dropped into the road about an inch deep or two inches or something like that on each side where it tore into the macadam. It tore it up within about five feet from where the tire marks stopped, and then it went on off the edge of the road then."

He noticed the rear axle and wheels against the first tree which had its bark knocked off in an area about three feet high and about two feet wide. The second tree had been scored, but not seriously damaged. He observed no damage to a limb on the first tree which projected over the roadway. He noticed no damage to the right mirror on the county truck.

The third witness for the appellees was Morris Martin who was sitting at the end of the farm lane leading into Copper Mine Road waiting for his wife. He had a full view of Dorcus Road from about 150 yards west of it. He saw the county truck come over the top of the hill and descend toward the hollow. The truck occupied "his half and half of the other one. * * * Half of the other side of the road." He watched the truck until it was obscured by the trees in the hollow. He described the speed of the truck as being "pretty good." Martin heard the collision and went to investigate. He also saw the truck's double tire marks which were fresh and left of center.

A registered land surveyor, Joseph M. Cutsail, Jr., testified for the appellees that he had taken measurements of the scene of the accident and of the county truck to make profiles. He described the area and noted that a branch of the first tree which projected above the road was five and one-half feet from the ground at the trunk of the tree. He found no damage to or

marks on the upper portion of the trunk of the first tree, but found marks on the second tree as the result of being scraped by the right front bumper and the right front fender of the truck. He observed no damage to the right portion of the dirt shield over the cab of the truck. The entire width of the truck was seven feet ten inches wide and the top of the dirt shield was seven feet six inches from the ground. Side view mirrors on both sides of the cab extended one foot two inches from the seven foot wide cab.

Max Kehne, the husband of the deceased's sister, testified that he had had certain traffic training when he was formerly manager of the Traffic and Signal Department of Frederick City. He said he had not observed the dual tire marks on the road when he last traveled it the day before the accident, but he saw them on the day of the accident when he arrived at the scene an hour after it had occurred. He made certain measurements and testified that the tire marks measured the same width as the wheels of the county truck.

Sergeant Koontz of the Maryland State Police, produced by appellants as a witness, investigated the accident. He had extensive experience in investigation of accidents. He observed the gouge marks in the road and saw the tire marks over the center of the road. However, by taking a view some distance from the point of impact, he found a skid mark on the east shoulder of the road, starting on the shoulder and leading up to the first tree. The mark was about forty feet in length. He saw scraping damage on the right side of the truck, found yellow paint marks on the bark of the first tree at approximately the same height as the scrapings. He found no physical evidence that indicated the county truck was to the left of the center of the road.

Haines, driver of the county truck, testified that on his return journey from the Dorcus farm from which the county had been hauling dirt, he saw the jeep traveling in the middle of the road. He estimated the speed of his truck from twenty-five to thirty miles per hour and estimated the position of the jeep to be fifty to sixty feet away. He testified that the jeep was then partially in the northbound lane, traveling fast. Haines moved as far off the road as he could onto the shoulder. He

said that the impact of the vehicles occurred at the same time his truck struck the tree on the east side of the road. The body of his truck and the rear wheels hit the tree at the same time the jeep hit the truck about a foot back of the cab on the left side of the body. He denied being anywhere but to the right side of the road at all times.

Trooper Ronald Lewis, the other investigating officer called by appellants, testified that he found the tire impression marks on the east side of the road previously mentioned by Sergeant Koontz and found an oil stain in the road across from the tree where he determined the point of impact to be. The oil stain was approximately in the middle of the road six and one-half feet from the edge of the road and measured three by three feet in area. He also saw the dual skid marks in the center of the road. He found nothing indicating the course of the Dorcus jeep. He saw damage to the bark of the trees on the east side of the road. They were marked with yellow paint from the county truck. He was permitted to give his opinion that from his investigation, the county truck was as far off the road as it could get under the circumstances. He also came to the conclusion that the marks shown on the photographs (the same marks which had been seen in the center of the road) had nothing to do with this particular accident.

George Mentzer, a foreman for the Frederick County Roads Board, was in charge of the Copper Mine job and arrived at the scene of the accident shortly afterwards. He said he noticed the skid marks in the road, which were described by appellees' witnesses as being fresh, and remembered seeing the same marks on the roadway a couple of days before the accident.

Appellees' theory of the accident was that the county truck was over the center of the road. The theory was partially based on the proposition that if the county truck had been off the road as testified to by Haines, the dirt shield would have struck the limb which overhung the road, there would have been yellow paint marks and scrapings at least seven feet up on the trunk of the tree, and the right side mirror extending from the cab would have been damaged. Appellees' positive evidence consisted of the dual tire marks over the center of the road, the oil or fluid stain in the center of the road, the gouge marks,

and the testimony that the truck was traveling in the wrong lane just prior to the accident. Appellants contended, on the other hand, that this evidence did not rise above speculation with respect to the cause of the accident.

Reliance solely upon evidence (which consists entirely of testimony of marks on the road seen by witnesses arriving at various times after the accident) for judicial determination of movements leading to a collision, and for imposition of a liability for damages, is beset with dangers. However, in some cases such evidence might amount to proof of negligence. *Martin Furniture Co. v. Yost,* 247 Md. 42, 230 A. 2d 338. *Gloyd v. Wills,* 180 Md. 161, 23 A. 2d 665; *Shafer v. State,* 171 Md. 506, 189 Atl. 273. The evidence in the present case, although circumstantial, was sufficient to take the case to the jury.

Not only was there testimony that there were no marks on the road prior to the accident and that only one county truck had used the seldomly traveled road on the day of the accident prior to its occurrence, but there was testimony that the county truck which Haines drove was traveling partially in the wrong lane just prior to the collision. See *Acme Poultry Corp. v. Melville,* 188 Md. 365, 53 A. 2d 1; *Melville v. State of Maryland,* 155 F. 2d 440 (4th Cir. 1946); and 46 A.L.R.2d 9. There was also testimony of fresh tire marks, gouge marks, and a stain of oil or brake fluid which would place the county truck at least partially to the left of center. Although this evidence was circumstantial, it could be used to contradict and overcome direct and positive testimony providing that the inferences drawn from it were reasonable and probable. *Acme Poultry Corp. v. Melville, supra.* There is no requirement that the circumstances, to justify the inferences sought, negate every other positive or possible conclusion. *Melville v. State of Maryland, supra.*

The inferences drawn by the appellees from their evidence were reasonable and probable, and the inferences drawn by appellants were also reasonable and probable. There was, therefore, in the case a direct conflict as to the real factual situation. Such conflicts the trier of facts must resolve. *Campbell v. State,* 203 Md. 338, 100 A. 2d 798. A motorist has the general duty to drive upon the right half of the roadway, Code (1957), Article 66½, Section 217 (a), and a motorist who violates this

provision does so at the risk of being held liable for negligence where a collision and resulting injuries are proximately caused by the violation. *Consol. Gas Etc. Co. v. O'Neill,* 175 Md. 47, 200 Atl. 359. The question whether the failure of Haines to keep to the right was the proximate cause of the accident was, in this case, for the jury. *Campbell v. State, Acme Poultry Corp. v. Melville,* and *Consol. Gas Etc. Co. v. O'Neill,* all *supra.*

The cases relied upon by the appellants are distinguishable. In *Shafer v. State,* 171 Md. 506, 189 Atl. 273, there was a collision between an eastbound truck and a westbound automobile. The only evidence offered to support negligence of the truck driver consisted of testimony of marks on the road seen by witnesses who arrived at various times after the accident. The road was heavily traveled. There was no testimony that the marks were such as made by the wheels and tires of the truck involved in the accident, nor was there any testimony as to the exact point of collision on the road. *State v. Hopkins,* 173 Md. 321, 196 Atl. 91, involved a collision on a gravel road between the southbound truck and a northbound pick-up truck. There was no evidence where the trucks were immediately before or at the time of the collision, nor that the defendant's truck was over the center lane of the road. This Court found that it was a rational inference that a cloud of dust raised by one of the trucks obscured the view of both drivers and that neither was aware of the proximity of the other in time to avoid the collision. In *Gloyd v. Wills, supra,* there were no marks on the road, and the only physical evidence was a grease or oil spot near the center of the road and the position of one of the vehicles involved which, after the accident, was found partially over the center line.

The question of whether Dorcus was contributorily negligent was also for the jury. The uncorroborated testimony of an adverse party that the deceased was to the left of center would not as a matter of law require a holding that the deceased was contributorily negligent. *Campbell v. State, supra.*

The second contention of appellants was that the trial court erred in refusing to grant their motion for a mistrial made after counsel for the appellees, in opening argument to the jury, used and applied a scale model of appellants' truck to a profile of the

road at the scene of the collision. Prior to the trial, the trial court was advised that Cutsail, the surveyor, would be offered to produce a scale model of the truck and a profile of the road. Testimony by Mr. Cutsail as to the profiles came into evidence without objection. The appellees had hoped that Cutsail, with the use of the model and profiles, could have given a reconstruction and opinion as to how the accident happened. This evidence was not permitted by the court. The theory of appellees' counsel in argument to the jury was to demonstrate by manual manipulation of the exhibits that the accident, as described by the driver of the truck, was an impossibility. Appellees' contention was that if appellants' truck driver had been proceeding northerly off the side of the road as he claimed, a protruding limb from the tree against which the truck collided must necessarily have damaged the dirt shield above the cab of the truck and also have damaged its right side view mirror. In cross-examination of Cutsail, appellants brought out that at various distances from the tree, there would be a decided difference in elevation and that a slight error in drawing the profiles might fail to account for a clearance by the truck of the overhanging branch of the tree. It was also pointed out in the testimony that the overhanging limb ascended abruptly from the trunk of the tree. At the trial both sides had the right to fully explore their theories as to how the accident happened. Although appellees' counsel may have used the model to demonstrate his theory of the accident, appellants' counsel had the opportunity to point out the weaknesses of such a demonstration and to recount the testimony that the limb ascended abruptly so that it was not impossible for the dirt shield to have missed the limb and the mirror to have missed the tree. In the instructions to the jury, the court summarized the two theories of the case and instructed the jury that they had to make a determination upon the evidence in the case, and there were no exceptions. Surveillance of counsel's argument to the jury is within the sound discretion of the trial judge and will not be disturbed on appeal unless clearly prejudicial. From the record of the entire proceedings, it appears that the appellants were not prejudiced.

There remains for our consideration the trial court's attempt

262

to reduce the amount of the remittitur after the appellants had noted their appeal to this Court. As pointed out earlier, it was discovered that an appeal had been noted earlier on the same day that the trial court amended its order for remittitur by changing the amount thereof from $35,000 to $27,500. It has been held by this Court that a trial court lacked authority to hear a motion to strike out a judgment after an appeal had been entered and was still pending when the motion came on for a hearing. *Visnich v. Wash. Sub. San. Comm.*, 226 Md. 589, 591, 174 A. 2d 718; *Giles v. DiRobbio*, 186 Md. 258, 46 A. 2d 611. In this instance, the trial court, after the appeal was filed and was still pending, *sua sponte* ordered that the original remittitur be reduced. Following the rule enunciated in *Visnich*, after an appeal has been filed and remains pending, the trial court would lack authority to grant a motion by appellees to reduce the remittitur. Thus, it follows that the court did not have authority to change the remittitur upon its own initiative. For the reasons above stated we will affirm the judgment entered following the filing of the original $35,000 remittitur.

*Judgment affirmed, with costs.*